# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-1925

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff-Appellee, | * | |
| | * | |
| v. | * | |
| | * | Appeal from the United States |
| Dodge Caravan Grand SE/Sport Van, | * | District Court for the |
| VIN #1B4GP44G2YB7884560; | * | District of Nebraska. |
| | * | |
| Defendant, | * | |
| | * | |
| Erin Clemons, | * | |
| | * | |
| Claimant-Appellant. | * | |
| | * | |

_____

Submitted: February 11, 2004
Filed:  October 27, 2004

_____

Before MELLOY, SMITH, and COLLOTON, Circuit Judges.

_____

MELLOY, Circuit Judge.

The claimant-appellant, Erin Clemons, appeals the district court's order of forfeiture of her 2000 Dodge Caravan Sport SE, which followed her guilty plea in state court to "possession of a controlled substance by theft, misrepresentation, fraud, forgery, deception, or subterfuge." See Neb. Rev. Stat. § 28-418(1)(c).  She argues

that the forfeiture order is unconstitutionally excessive. For the reasons stated below, we reverse and remand.

I.

The district court ordered forfeiture of Ms. Clemons's minivan at the conclusion of a non-jury trial. The trial was based on the parties' stipulated facts, which the district court adopted in making its findings. Our recitation of the facts is, likewise, drawn from the stipulated facts submitted to the district court.

Ms. Clemons was addicted to the prescription pain killer, hydrocodone. To support her addiction, Ms. Clemons called in phony prescriptions to pharmacies, using the aliases "Katie Gibbs," "Sara Foster," "Kelly Clemons," "Thomas Gleason," and "James McGill." In January of 2001, a pharmacist contacted the police suspecting Ms. Clemons of fraud. The pharmacist gave police a physical description of Ms. Clemons and of the defendant property, which Ms. Clemons used to pick up the prescription. In April 2001, another pharmacist from a different pharmacy contacted police about suspected fraud. On that occasion, Ms. Clemons picked up the prescription using the pharmacy's drive-thru window, and the pharmacist identified the customer as Ms. Clemons using a police photograph. She also described the defendant property and its license plate number.

On April 4, 2001, police arrested Ms. Clemons for obtaining fraudulent prescriptions. She made a post-Miranda statement to police indicating that she had obtained at least four hydrocodone prescriptions by providing doctors with false information. Only one month after her arrest, another pharmacist contacted police about possible fraud in obtaining hydrocodone prescriptions. Police showed the pharmacist a photograph of Ms. Clemons, and the pharmacist positively identified her as the person who obtained hydrocodone without a valid prescription from her pharmacy on four occasions.

Yet another pharmacist contacted police in August about possible fraudulent prescriptions. Police staked out the pharmacy parking lot and witnessed Ms. Clemons driving the defendant property. The police officer on the scene observed her driving her vehicle up and down the parking lot aisles and believed she was conducting counter-surveillance. After several minutes, Ms. Clemons used the drive-thru window to obtain the fraudulent prescription of hydrocodone. While she was in the drive-thru lane, police arrested her. Police seized the defendant property at the time of the arrest.

The parties agree that all the prescriptions Ms. Clemons obtained were for personal use and that she reaped no monetary benefit from them. Nor did she give the tablets to anyone else. Ms. Clemons received three Class IV felony convictions in Nebraska state court for her activities described above. A Class IV felony under Nebraska law is punishable by a maximum $10,000.00 fine and a maximum five-year term of imprisonment. Ms. Clemons was sentenced to thirty-six months intensive supervised probation; thirty days electronic monitoring; "show cause" time of 180 days; and inpatient drug treatment. In addition, she was assessed court costs, the cost of electronic monitoring, and the cost of chemical testing, totaling $388.50. The total value of the hydrocodone tablets Ms. Clemons was charged with fraudulently obtaining was between $644.00 and $1,127.00. She also obtained liquid cough medication containing hydrocodone, which was valued at $900.00. At the time of its seizure, the defendant property was valued between $12,000.00 and $14,000.00. Ms. Clemons was its sole owner, and the minivan served as the family vehicle for Ms. Clemons and her three children.

In January of 2002, the United States of America brought a forfeiture action in federal district court seeking the forfeiture of Ms. Clemons's minivan, pursuant to 21 U.S.C. § 881. After finding that the defendant property "facilitated" Ms. Clemons's transportation, receipt, possession, or concealment of hydrocodone, a Schedule I controlled substance, the district court found that forfeiture of the defendant property

was not unconstitutionally excessive and ordered forfeiture. Ms. Clemons appeals, maintaining that her vehicle did not facilitate her possession of hydrocodone and, alternatively, that forfeiture constitutes an unconstitutionally excessive fine under the facts of this case.

## II.

A civil forfeiture action is an *in rem* proceeding brought by the government as plaintiff against defendant property asserting that "[a]ll right, title, and interest in [the defendant] property" has vested in "the United States upon commission of the act giving rise to forfeiture." 18 U.S.C. § 981(f). Section 881(a)(4) of the Controlled Substances Act authorizes the forfeiture of "[a]ll conveyances, including aircraft, vehicles, or vessels, which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment" of narcotics. 21 U.S.C. § 881(a)(4). This forfeiture provision is subject to the standards set forth in the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), 18 U.S.C. § 983. See United States v. $84,615 in U.S. Currency, 379 F.3d 496, 501 (8th Cir. 2004) (applying CAFRA's standards to forfeiture action brought under 21 U.S.C. § 881(a)(6)). The Act places the initial burden on the government of proving by a preponderance of the evidence that the defendant property is subject to forfeiture. 18 U.S.C. § 983(c)(1). Here, the government contends that Ms. Clemons's vehicle facilitated the commission of her drug offense. Accordingly, CAFRA requires the government to "establish that there was a substantial connection between the property and the offense." Id. § 983(c)(3); cf. United States v. Premises Known as 3639-2nd St., N.E., Minneapolis, Minn., 869 F.2d 1093, 1098 (8th Cir. 1989) (Arnold, Richard S., concurring) (stating in forfeiture action prior to CAFRA's enactment that "this Court [did] not depart from its past insistence that there must be a substantial connection between the property being forfeited and a drug-related crime."); United States v. Prop. Identified as 1813 15th St. N.W., Washington D.C., 956 F. Supp. 1029, 1033 (D.D.C. 1997) (stating in pre-CAFRA case that "[f]acilitation can be

proven by establishing a 'substantial connection' between the illegal activity and the property being forfeited").

Our "review of a district court's decision on the excessive fines issue 'must be based upon the analysis and record finally developed by the district court.'" United States v. One 1970 36.9' Columbia Sailing Boat, 91 F.3d 1053, 1057 (8th Cir. 1996) (quoting United States v. Alexander, 32 F.3d 1231, 1237 (8th Cir. 1994)). Furthermore, in a forfeiture proceeding, we review the district court's factual findings for clear error but apply a de novo standard of review to our consideration of whether or not those facts render the defendant property subject to forfeiture. $84,615 in U.S. Currency, 379 F.3d at 501. "The burden of showing something by a 'preponderance of the evidence,' the most common standard in the civil law, 'simply requires the trier of fact "to believe that the existence of a fact is more probable than its nonexistence before [he] may find in favor of the party who has the burden to persuade the [judge] of the fact's existence."'" Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal., 508 U.S. 602, 622 (1993) (alterations in original) (quoting In re Winship, 397 U.S. 358, 371-72 (1970) (Harlan, J., concurring)). In determining whether Ms. Clemons's vehicle is substantially connected to her drug crime, "[c]ircumstantial evidence can be used by the United States to establish its burden of proof." $84,615 in U.S. Currency, 379 F.3d at 501.

Although this is a close case, we agree with the district court that Ms. Clemons's minivan is subject to forfeiture, because the government has proved by a preponderance of the evidence that the vehicle was substantially connected to her criminal activity. The stipulated facts show that Ms. Clemons used her vehicle to drive to pharmacies to pick up fraudulently obtained prescriptions of hydrocodone. It is reasonable to infer that she evaded detection by using the defendant property to procure the hydrocodone tablets using pharmacies' drive-thru window lanes. Moreover, the officer who arrested Ms. Clemons in August of 2001 when her vehicle was seized believed that she used her vehicle to conduct counter-surveillance.

Specifically, the officer observed Ms. Clemons drive up and down the pharmacy parking lot, park for several minutes and then move her vehicle to a different parking spot.

In support of reversal, Ms. Clemons cites <u>Platt v. United States</u>, 163 F.2d 165 (10th Cir. 1947). In that case, Blanche Cooper drove her mother's automobile to a pharmacy and obtained morphine tablets for personal use using "questionable doctor's prescriptions." <u>Id.</u> at 166. She parked the car outside the pharmacy and went inside to retrieve the tablets. <u>Id.</u> She was arrested outside the drug store, and the government sought forfeiture of her mother's vehicle. <u>Id.</u> The Court of Appeals for the Tenth Circuit held that the vehicle was not subject to forfeiture, however, because "[i]t was merely the means of locomotion by which [the defendant] went to the store to make the purchase. Its use enabled her to get to the store more quickly than if she had walked or used a slower means of transportation." <u>Id.</u> at 167.

Ignoring the significant fact that <u>Platt</u> was decided before the "innocent owner" defense developed, <u>see</u> <u>Calero-Toledo v. Pearson Yacht Leasing Co.</u>, 416 U.S. 663, 688-89 (1974) (implying innocent owner defense *may* be available in a case nearly three decades after <u>Platt</u>), <u>Platt</u> is easily distinguishable from Ms. Clemons's case. Ms. Clemons did not simply use her vehicle to drive to the pharmacy. She used it as a tool to conduct counter-surveillance. In addition, circumstantial evidence supports the inference that she used the vehicle to evade detection and suspicion by using pharmacies' drive-thru lanes to obtain her phony prescriptions. For instance, it is probable that she was less likely to be recognized while seated in her minivan in a drive-thru lane than at a pharmacy counter, especially under these circumstances where she used several aliases to obtain her fraudulent prescriptions. Accordingly, we affirm the district court's finding that Ms. Clemons's van is subject to forfeiture.

We must, therefore, consider whether Ms. Clemons proved that forfeiture of her vehicle, while warranted, constitutes an unconstitutionally excessive fine. <u>See</u> 18

U.S.C. § 983(g)(3) (placing burden of establishing gross proportionality by a preponderance of the evidence on claimant). Even though Congress drafted 21 U.S.C. § 881(a)(4) broadly, because it "intended forfeiture to be a powerful weapon in the war on drugs," see United States v. 141st St. Corp. by Hersh, 911 F.2d 870, 878 (2d Cir. 1990) (citing S. Rep. No. 225, 98th Cong., 2nd Sess. 191-92, reprinted in 1984 U.S. Code Cong. & Admin. News 3182, 3374-75), the provision is subject to constitutional protection under the Eighth Amendment's Excessive Fines Clause. See Austin v. United States, 509 U.S. 602, 604 (1993); accord One 1970 36.9' Columbia Sailing Boat, 91 F.3d at 1057 ("Civil forfeiture under § 881(a)(4) is subject to the limitations of the Excessive Fines Clause.") (citing Dep't of Revenue of Mont. v. Kurth Ranch, 511 U.S. 767 (1994); Austin, 509 U.S. at 604). This clause provides: "Excessive bail shall not be required, nor excessive fines imposed . . . ." U.S. Const. amend. VIII.

"The touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish." United States v. Bajakajian, 524 U.S. 321, 334 (1998). Though the Supreme Court has held that "a punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense," id., the Court has expressly declined to enunciate a test of gross disproportionality. See Austin, 509 U.S. at 622-23. Instead, the Court has chosen to leave that determination to the lower courts. See id. ("Prudence dictates that we allow the lower courts to consider that question in the first instance.").

In this circuit, we apply a two-pronged approach that first requires the claimant to "mak[e] a prima facie showing of 'gross disproportionality.'" United States v. Bieri, 68 F.3d 232, 236 (8th Cir. 1995) (quoting Alexander, 32 F.3d at 1235). "Preliminarily, the defendant has the initial burden of making a prima facie showing of gross disproportionality." United States v. Premises Known as 6040 Wentworth

Ave. S., Minneapolis, Hennepin County, Minn., 123 F.3d 685, 688 (8th Cir. 1997) (quotations omitted). If the claimant can make this showing, the court considers whether the disproportionality "reach[es] such a level of excessiveness that in justice the punishment is more criminal than the crime." Id. (quotations omitted).

"To determine whether the facts indicate gross disproportionality, the district court must consider multiple factors, including the extent and duration of the criminal conduct, the gravity of the offense weighed against the severity of the criminal sanction, and the value of the property forfeited." Bieri, 68 F.3d at 236. We have also identified "'"[o]ther helpful inquiries [such as] an assessment of the personal benefit reaped by the defendant, the defendant's motive and culpability and, of course, the extent that the defendant's interest and the enterprise itself are tainted by criminal conduct.'"" Id. (quoting Alexander, 32 F.3d at 1236-37, in turn quoting United States v. Sarbello, 985 F.2d 716, 724 (3d Cir. 1993)). This list is not exhaustive, see id., and, in dicta, we have criticized an excessive fines analysis that failed to consider factors, such as "the monetary value of the property, the extent of the criminal activity associated with the property, the fact that the property was a residence, the effect of the forfeiture on innocent occupants of the residence, including children, or any other factors that an excessive fine analysis might require." United States v. One Parcel of Real Prop., Located at 9638 Chicago Heights, St. Louis, Mo., 27 F.3d 327, 331 (8th Cir. 1994); see Bieri, 68 F.3d at 237 ("We conclude that the dicta in Chicago Heights enumerating intangible factors, including the property's character as a residence or the effect of forfeiture on innocent occupants and children, may be relevant to the Eighth Amendment analysis in some cases."). A survey of case law also illustrates other potentially relevant factors, such as whether the Act authorizing forfeiture is aimed at the underlying criminal act giving rise to the forfeiture, Bajakajian, 524 U.S. at 338, the harm caused by the criminal wrongdoer's acts, id. at 339, and the value of drugs seized, see Bieri, 68 F.3d at 237.

We have also stated that "'if the value of the property forfeited is within or near the permissible range of fines using the sentencing guidelines, the forfeiture almost certainly is not excessive.'" United States v. Sherman, 262 F.3d 784, 795 (8th Cir. 2001), opinion vacated and subsequently reinstated by United States v. Diaz, 296 F.3d 680 (8th Cir. 2002) (en banc) (quoting United States v. 817 N.E. 29th Drive, 175 F.3d 1304, 1310 (11th Cir. 1999)). The district court relied on this factor without evaluating the import of any of the other various factors we have enumerated in determining whether a forfeiture is excessive. This is understandable, because the government mistakenly directed the district court to Guideline 2D1.1, which pertains to drug manufacturing crimes and provides for a fine of $7,500 to $75,000. The value of Ms. Clemons's minivan was between $12,000 and $14,000. On appeal, the government concedes that it invoked an incorrect Guideline provision. The parties now agree that the most applicable Guideline to Ms. Clemons's underlying crime is 2D2.1, which pertains to penalties for drug possession and provides for a maximum fine of $10,000.

Under these circumstances, we find that the case should be remanded for further consideration by the district court. On remand, the district court should consider all the relevant factors bearing on the constitutionality of this forfeiture. We do not express an opinion as to the ultimate issue of whether or not forfeiture of the defendant property is unconstitutionally excessive. Instead, we conclude only that the district court should evaluate this case in light of the proper Guideline provision and other factors that bear on the just resolution of this case. See 6040 Wentworth Ave. S., 123 F.3d at 688 (directing district courts to consider multiple factors).

Therefore, we reverse the judgment of the district court and remand for further proceedings not inconsistent with this opinion.

COLLOTON, Circuit Judge, concurring in part and dissenting in part.

I concur in the court's conclusion that the government proved by a preponderance of the evidence that there was a "substantial connection" between Ms. Clemons's minivan and her criminal offense of possessing a controlled substance by theft, misrepresentation, fraud, forgery, deception, or subterfuge. Clemons's use of the vehicle to gain physical possession of the drugs and to evade detection – by visiting multiple pharmacies, using drive-thru lanes rather than entering the pharmacies, and conducting counter-surveillance – provides abundant evidence of the connection between the vehicle and her commission of the crimes.

I respectfully dissent, however, from the court's decision to remand the case to the district court to decide again the constitutional question whether forfeiture of the minivan is prohibited by the Excessive Fines Clause of the Eighth Amendment. The case was tried to the district court on stipulated facts, and there is thus no need to remand for additional findings of fact. Although the district court based its legal decision in part on a mistaken understanding of the applicable fine range under the United States Sentencing Guidelines, the parties have briefed and argued the appeal according to the correct guideline range, and our review of the district court's legal determination is *de novo*. *United States v. Moyer*, 313 F.3d 1082, 1086 (8th Cir. 2002). We have the evidence and argument necessary to decide the case, and a remand would primarily lay the groundwork for yet another likely appeal of the constitutional question, in which the parties would brief and argue the same facts and law presented to us in this appeal.

On the merits, I would hold that forfeiture of the minivan is constitutional. At the outset, there is a substantial question whether "gross proportionality" analysis under the Excessive Fines Clause even applies to the forfeiture in this case. In *United States v. Bajakajian*, 524 U.S. 321 (1998), the Supreme Court reiterated that "[i]nstrumentalities historically have been treated as a form of 'guilty property' that

-10-

can be forfeited in civil *in rem* proceedings." *Id.* at 333. The Court further intimated that an *in rem* forfeiture of an "instrumentality" – that is, property that is "the actual means by which an offense [is] committed" – is not subject to review under the Excessive Fines Clause. *Id.* at 333 n.8. As an example of property that falls within the "strict historical limitation" on the definition of "instrumentality," the Court cited the forfeiture of an automobile that facilitates the transportation of goods concealed to avoid taxes. *Id.* at 333 nn.8 & 9 (citing *J.W. Goldsmith, Jr.-Grant Co. v. United States*, 254 U.S. 505, 508-10 (1921)).

If, as the Court suggested, an automobile used to "remove" or "conceal" goods to avoid taxes is an "instrumentality" exempt from excessive fines analysis, then it is difficult to see why the vehicle used by Ms. Clemons to procure controlled substances is not similarly situated. Just as the vehicle in *J.W. Goldsmith-Grant Co.* was "the actual means by which" the driver committed the offense of removing and concealing goods, the Clemons minivan was "the actual means by which" its owner illegally came into possession of the hydrocodone. *See Bajakajian*, 524 U.S. at 333 nn.8 & 9; *see also Austin v. United States*, 509 U.S. 602, 627-28 (1993) (Scalia, J., concurring in part and concurring in the judgment) (scales used to measure out unlawful drug sales are instrumentalities). Clemons used the minivan to appear at the drive-thru window of the pharmacy; hence, the vehicle was "actually used" by her to obtain dominion and control over the prescription drugs. *See* 524 U.S. at 333 n.8. Applying the Court's analysis of instrumentalities in *Bajakajian*, the *in rem* forfeiture of the minivan in this case appears to raise no issue under the Excessive Fines Clause.

But following the "gross proportionality" inquiry that our court adopted prior to *Bajakajian*, I also believe that the forfeiture is constitutional. Under that approach, we have considered both whether the forfeited property was an "instrumentality," or had a close relationship to the criminal offense, and whether the severity of the forfeiture was "proportional" to the gravity of the offense. *See generally United States v. 6040 Wentworth Ave.*, 123 F.3d 685, 688-90 (8th Cir. 1997). As the court

-11-

notes, *ante* at 9, in considering the proportionality aspect of this analysis, we have said that "'[i]f the value of the property forfeited is within or near the permissible range of fines using the sentencing guidelines, the forfeiture almost certainly is not excessive.'" *United States v. Sherman*, 262 F.3d 784, 795 (8th Cir. 2001) (quoting *United States v. 817 N.E. 29th Drive*, 175 F.3d 1304, 1310 (11th Cir. 1999)), *vacated sub nom. United States v. Diaz*, 270 F.3d 741 (8th Cir. 2001), *reinstated*, 296 F.3d 680 (8th Cir. 2002) (en banc). We presumably have adopted this rule on the view that the Sentencing Commission's determination of a fine range usually identifies a sanction that is not disproportionately severe in relation to the gravity of the offense.

Here, the permissible fine for Clemons's criminal offense (if she had been prosecuted in federal court) ranged up to $10,000 under the sentencing guidelines. USSG §§ 2D2.1(a)(1), 5E1.2(c)(3). The stipulated value of the minivan was between $12,000 and $14,000. A value of $12,000 (taking the low end in light of Clemons's burden of proof) is "near" the guideline maximum of $10,000, and the amount by which it exceeds the guideline range certainly is not so great that "the punishment is more criminal than the crime." *6040 Wentworth Ave.*, 123 F.3d at 688 (internal quotation omitted); *see also United States v. 427 & 429 Hall St.*, 74 F.3d 1165, 1172-73 (11th Cir. 1996) (forfeiture of property valued at $65,000 was not excessive where the maximum fine under the sentencing guidelines was $40,000).

The court recites numerous factors – a total of fourteen, by my count – that may be applicable in determining whether a forfeiture is prohibited by the Eighth Amendment. Some have minimal relevance in this case. The importance of a forfeiture's effect on innocent parties, for example, "diminishes" where (as here) the property owner has been convicted of a crime and the property is used substantially to facilitate criminal conduct. *United States v. Bieri*, 68 F.3d 232, 237 (8th Cir. 1995). Other factors (such as the harm caused by the wrongdoer's act, the value of drugs seized, and the value of the property forfeited) are alternative measures of the gravity of an offense or the severity of a penalty, and absent unusual circumstances,

they are subsumed within our general presumption that a penalty within or near the applicable fine range under the guidelines is not grossly disproportionate.

More generally, it seems to me helpful for our court to give some guidance to the district courts about which factors deserve most weight in determining whether a forfeiture constitutes an "excessive fine," and to consolidate redundant factors where possible. As others have noted, the sort of multi-factor balancing test described by the court today often "leaves much to be desired." *Exacto Spring Corp. v. Comm'r*, 196 F.3d 833, 834 (7th Cir. 1999). Lists of undifferentiated factors to be balanced on a case-by-case basis often are "redundant, incomplete, and unclear," *id.* (quoting *Palmer v. City of Chicago*, 806 F.2d 1316, 1318 (7th Cir. 1986)), and I fear that our ever-growing enumeration in this area is approaching that description. While multi-factor balancing tests increase the discretion of judges, they also heighten the risk of arbitrary decisionmaking, and reduce predictability from one case to the next. *Id.* at 835. Rational actors in the criminal justice system, whether law enforcement officials or persons who may be subject to the forfeiture statutes, would benefit from clarity in our jurisprudence.

The precedents of the Supreme Court and our court concerning the Excessive Fines Clause suggest that two factors deserve predominant consideration – (1) the relationship between the forfeited property and the criminal offense, *see Bajakajian*, 524 U.S. at 333 n.8; *6040 Wentworth Ave.*, 123 F.3d at 690; and (2) whether the severity of the penalty is proportional to the gravity of the offense, as measured by whether the value of the forfeited property is within or near the applicable fine range under the sentencing guidelines. *Id.*; *Sherman*, 262 F.3d at 795. In this case, both factors support the government's forfeiture of the minivan. None of the other factors cited by the court presents a strong countervailing consideration that raises a substantial question about the constitutionality of the forfeiture. Accordingly, I would affirm the judgment of the district court.

_____