# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 11-1661

———————

| | | |
|---|---|---|
| Friends of the Norbeck; | * | |
| Native Ecosystems Council, | * | |
| | * | |
| Appellants, | * | |
| | * | |
| vs. | * | |
| | * | |
| United States Forest Service; | * | Appeal from the United States |
| Rick Cables, Regional Forester, | * | District Court for the |
| | * | District of South Dakota. |
| Appellees, | * | |
| | * | |
| State of South Dakota; Jeff Vonk, in | * | |
| his official capacity as Secretary of | * | |
| the South Dakota Department of | * | |
| Game, Fish, and Parks, | * | |
| | * | |
| Intervenors below - Appellees. | * | |

———————

Submitted: October 18, 2011
Filed: November 16, 2011

———————

Before MURPHY, BYE, and SMITH, Circuit Judges.

———————

MURPHY, Circuit Judge.

Friends of the Norbeck and Native Ecosystems Council (collectively Friends of the Norbeck) brought this action against the United States Forest Service in connection with its Norbeck Wildlife Project (the Project). The State of South Dakota and the South Dakota Department of Game, Fish, and Parks (collectively South Dakota) intervened to defend the Project. The district court[1] dismissed the complaint, concluding in relevant part that Friends of the Norbeck failed to exhaust the administrative remedies for their National Environmental Policy Act (NEPA) claim and that the Project was not arbitrary, capricious, or contrary to the Norbeck Organic Act (NOA). On appeal, Friends of the Norbeck argue that the Forest Service violated NEPA and the NOA by approving the Project. We affirm.

I.

The Norbeck Wildlife Preserve is located within the Black Hills National Forest in South Dakota. The Forest Service manages the approximately 28,000 acres of public land within the Preserve. The NOA created the Preserve in 1920 by stating that the land "be set aside for the protection of game animals and birds, and be recognized as a breeding place therefor." 16 U.S.C. § 675. It contains one of the last old growth forests in the Black Hills and provides habitat for many species of animals and birds, some of which have been designated as rare or sensitive.

Years of wildfire suppression in the Preserve have led to the predominance of ponderosa pine in overly dense stands, decreasing the prevalence of other types of habitat and creating a substantial risk of catastrophic fire. Additionally, in 2006 the mountain pine beetle began killing ponderosa pine stands within the Black Elk Wilderness at the center of the Preserve. The outbreak is expected to spread throughout the Preserve by 2013 and kill nearly all of the late successional pines by

---

[1]The Honorable Jeffrey L. Viken, United States District Judge for the District of South Dakota.

2020. The Forest Service developed the Project, which consists of thinning trees through controlled fire and select logging on 6,000 acres, to respond to these two threats and to "improve the habitat for game animals and birds."

The Forest Service's past management actions in the Preserve have been the subject of federal litigation and congressional legislation. In 1994 and 1995, the Forest Service approved two unrelated logging projects in the Preserve, which were challenged by the Sierra Club Black Hills Group. The Tenth Circuit remanded for the Forest Service to reconsider the projects, holding that the Forest Service must develop projects that comply first with the "narrow parameters" of the NOA, supplemented with the more general mandate of the National Forest Management Act (NFMA). Sierra Club-Black Hills Group v. U.S. Forest Service, 259 F.3d 1281, 1288–89 (10th Cir. 2001).

In 2002 Congress explicitly authorized the two logging projects that the Tenth Circuit had addressed and stated generally that the Forest Service "is authorized to use the full spectrum of management tools including prescribed fire and silvicultural treatments to benefit game animal and bird habitat in meeting the purposes of the Norbeck Organic Act." Pub. L. No. 107-206 § 706(h). Congress also required the Forest Service and the South Dakota Department of Game, Fish, and Parks (South Dakota Parks Department) to enter into a memorandum of understanding on procedures for monitoring the effects of management activities, consulting on habitat management, and reviewing and recommending any changes to the direction of the Preserve. Id. § 706(i).

In response to the congressional directive, the Forest Service and South Dakota Parks Department began a joint assessment of the Preserve. Because the unique habitat needs of the Preserve's game animal and bird species sometimes conflict with one another and it is not possible to design management activities around every species, the Forest Service and South Dakota Parks Department

-3-

biologists, with stakeholder input, selected twelve species that use key habitat elements with the objective that habitat management for those species "will provide for all game animals and birds" in the Preserve. This is referred to as the focus species list, and the Project is designed around the habitat needs of these game animals and birds.

The Forest Service began preparing an Environmental Impact Statement (EIS) in 2007 with a proposed action plan and a no action alternative. It then added two additional alternatives to take into account the mountain pine beetle outbreak and included all four alternatives in the EIS. The Forest Service released the final EIS in March 2010. The Forest Service district ranger issued a Record of Decision, selecting alternative 4, which proposed prescribed burning and logging throughout the Preserve, with modifications to eliminate any action in the Black Elk Wilderness and to adjust the timing of the activities to minimize the impact on spring breeding.

Friends of the Norbeck challenged the decision in administrative proceedings, and the administrative appeals officer affirmed. Friends of the Norbeck then filed this action in federal court, and South Dakota intervened in support of the Project. The district court dismissed the complaint, concluding in part that Friends of the Norbeck failed to exhaust the administrative remedies for their NEPA claim and that the Project was not arbitrary, capricious, or contrary to the mandate of the NOA. On appeal, Friends of the Norbeck pursue only their claims that the Forest Service violated NEPA by not preparing an EIS for the focus species list and that the Project violates the NOA because it will kill or displace game animals and birds as well as damage their habitat.

II.

We first address whether Friends of the Norbeck can bring their NEPA claim in federal court. While NEPA does not authorize a private right of action, the

-4-

Administrative Procedure Act (APA) permits judicial review of whether an agency's action complied with NEPA. Sierra Club v. Kimbell, 623 F.3d 549, 558–59 (8th Cir. 2010). NEPA's purpose is to ensure a fully informed and well considered decision, Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc., 435 U.S. 519, 558 (1978), and disclosure to the public that the agency has considered environmental concerns in its decisionmaking. Balt. Gas & Elec. Co. v. Natural Res. Def. Council, Inc., 462 U.S. 87, 97 (1983). As such, NEPA's mandate is "essentially procedural" and its rules do not govern the substance of the decision itself. Vt. Yankee Nuclear Power Corp., 435 at 558. An agency "is not constrained by NEPA from deciding that other values outweigh the environmental costs" so long as "the adverse environmental effects of the proposed action are adequately identified and evaluated." Robertson v. Methow Valley Citizens Council, 490 U.S. 332, 350 (1989).

Before a party can challenge an action by the Forest Service in federal court, it must exhaust administrative remedies. 7 U.S.C. § 6912(e); see Ace Property & Cas. Ins. Co. v. Fed. Crop Ins. Corp., 440 F.3d 992, 999 (8th Cir. 2006) (concluding that 7 U.S.C. § 6912(e) codifies the judicial doctrine of exhaustion). The requirement of exhaustion serves two purposes. Woodford v. Ngo, 548 U.S. 81, 89 (2006). First, it protects administrative agency authority by allowing the agency to correct its own mistakes "before it is haled into federal court" and by discouraging disregard of its procedures. Id. (quotation omitted). Second, it promotes efficiency by resolving disputes before the agency rather than through litigation in federal court. Id. When challenging an agency's compliance with NEPA, parties must "structure their participation so that it alerts the agency to the parties' position and contentions in order to allow the agency to give the issue meaningful consideration." Dep't of Transp. v. Public Citizen, 541 U.S. 752, 764 (2004) (quotation omitted). Failure to raise an objection before the agency results in its waiver. Cent. S.D. Coop. Grazing Dist. v. Sec'y. of U.S. Dep't of Agric., 266 F.3d 889, 901 (8th Cir. 2001).

Friends of the Norbeck argue that they exhausted their claim that the Forest Service violated NEPA by failing to conduct a separate EIS of the focus species list. They cite their comments in the Project's EIS that the focus species list is "heavily weighted towards 'weedy species' that can tolerate or even thrive amid human disturbances"; that predators "known to be secretive and averse to human disturbance . . . were dismissed"; and that "[t]he list needs to be reformulated," as well as the Forest Service's response that the "selection of focus species is outside the scope of this EIS."

These comments challenge which species were included in the list, not the process of developing the list. NEPA, however, does not govern which substantive choice an agency makes. Vt. Yankee Nuclear Power Corp., 435 U.S. at 558. Friends of the Norbeck's comments in the EIS were insufficient to give the Forest Service an opportunity to consider their claim that NEPA required an EIS for the focus species list before being sued in federal court, Public Citizen, 541 U.S. at 764, and Friends of the Norbeck have not pointed to any other way that they raised their procedural claim in the administrative appeal. We therefore agree with the district court that Friends of the Norbeck failed to exhaust the administrative remedies for their NEPA claim. Friends of the Norbeck do not assert that an exception to exhaustion applies, and consequently we conclude that judicial review is improper.

Because we determine that Friends of the Norbeck did not exhaust their administrative remedies, we do not need to reach the additional arguments raised by Forest Service and South Dakota against Friends of the Norbeck's NEPA claim.[2]

---

[2]South Dakota's argument that this court lacks subject matter jurisdiction lacks substance. We conclude that the language in the 2002 legislation exempting the authorized logging projects from NEPA and judicial review does not extend to the focus species list, which was completed five years later and was only tangentially related to the 2002 legislation. See Pub. L. No. 107-206 § 706(j).

## III.

We turn next to Friends of the Norbeck's contention that the Project violates the NOA. The Forest Service contends that its management actions in the Preserve are "committed to agency discretion by law" and that judicial review is inappropriate under 5 U.S.C. § 701(a)(2) of the APA, relying on Tamenut v. Mukasey, 521 F.3d 1000, 1005 (8th Cir. 2008).

The statutory exception to judicial review in the APA is "very narrow" and "is applicable in those rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply." Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 410 (1971) (quotation omitted). Determining whether an action is committed to agency discretion "requires careful examination of the statute on which the claim of agency illegality is based." Webster v. Doe, 486 U.S. 592, 600 (1988). The conclusion that agency action is not susceptible to review is supported by the "absence of any statutory factors to guide the agency's decision-making process, in combination with the open-ended nature of the inquiry." Tamenut, 521 F.3d at 1004.

The Forest Service argues that the NOA, which directs that the Preserve "be set aside for the protection of game animals and birds, and be recognized as a breeding place therefor," 16 U.S.C. § 675, does not include statutory factors by which to measure the agency's management decisions. We disagree. Not all agency action in the Preserve would be acceptable. Unlike the regulation at issue in Tamenut, which provides that the Board of Immigration "may at any time reopen or reconsider on its own motion any case in which it has rendered a decision," Tamenut, 521 F.3d at 1002 (emphasis omitted), the NOA's mandate provides standards, albeit broad ones, for the Forest Service's decisions with respect to game animals and birds and guidance to the

courts for evaluating those decisions. C.f. Sierra Club-Black Hills Group, 259 F.3d at 1285–89 (reviewing the Forest Service's action for compliance with the NOA).

Having concluded that judicial review of the Forest Service's management decisions is not precluded, we turn to Friends of the Norbeck's claim that the Project violates the NOA. We review de novo a district court's decision on whether an agency action violates the APA. Nebraska ex rel. Bruning v. U.S. Dep't of Interior, 625 F.3d 501, 509 (8th Cir. 2010). Under the APA, we will only set aside the Forest Service's action if it is " 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.' " Friends of Richards-Gebaur Airport v. F.A.A., 251 F.3d 1178, 1185 (8th Cir. 2001) (quoting 5 U.S.C. § 706(2)(A)). A decision is arbitrary and capricious if

> the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983).

Under this standard a court should not substitute its judgment for that of the agency, but "the agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." Id. (quotation omitted). When the resolution of a dispute "involves primarily issues of fact and analysis of the relevant information 'requires a high level of technical expertise, we must defer to the informed discretion of the responsible federal agencies.' " Cent. S.D. Coop. Grazing Dist., 266 F.3d at 894 (quoting Marsh v. Oregon Natural Res. Council, 490 U.S. 360, 377 (1989)).

Friends of the Norbeck argue that the decision to approve the Project was arbitrary and capricious because the Forest Service failed to consider how displaced game animals and birds will survive during burning and thinning and how certain game animal and bird species will be protected in the long term if individual animals are killed and their habitat depleted while the Project is executed. Our careful review of the record reveals however that the Forest Service did consider the direct and indirect effects of the Project on the Preserve's focus species, the management indicator species for the Black Hills National Forest, and species of local concern. It also evidences that each of these species benefits from different aspects of the Project and that the district ranger modified certain parameters of the proposed action before approving the Project in order to further mitigate possible adverse effects.

The Record of Decision and final EIS make clear that the Forest Service considered the habitat needs of various game animal and birds as well as the effects of the burning and logging activities. These documents show that the Project is expected to benefit song sparrow, ruffed grouse, mountain bluebird, mountain goat, bighorn sheep, white tailed deer, and elk by reducing the encroachment of pine in other habitat areas and eliminating some of the dense undergrowth. Several of the species Friends of the Norbeck highlight as subject to displacement or death through the burning and logging, such as Merriam's turkey and white tailed deer are described as abundant throughout the Black Hills and are at little long term risk. Others, such as elk, are expected to benefit from additional foraging habitat but will suffer from the loss of cover, due largely to the mountain pine beetle outbreak. The Forest Service plans to leave some stands of pine untouched to benefit the northern goshawk, black-backed woodpecker, and brown creeper, which nest and forage in dense old growth forest. The management actions are also directed at limiting the spread of the mountain pine beetle by reducing stand density. The aim is both to retain more mature pine and promote a faster rate of old growth replacement.

The district ranger also adjusted the parameters of the approved Project in the Record of Decision to try to mitigate the adverse impact on game animals and birds. The Forest Service modified the timing of logging to stop operations during the spring to avoid disturbing migratory patterns, nesting birds and deer fawning and elk calving. It deferred any action in the Black Elk Wilderness to retain more mature pine and avoid man made disturbances in the area, and it eliminated two proposed clearcut actions. The alternative of no action, which would not create disturbances in the Preserve, was also compared by the district ranger with alternative 4. He then stated that "[a]lternative 4 would result in the retention of more large trees and mature habitat than any other alternative . . . [and that] these habitat components will be most lacking on the landscape" and concluded that "from the perspective of providing habitat for game animals and birds, which is the founding purpose of [the Preserve], [a]lternative 4 is the environmentally preferred alternative."

The Forest Service is faced with two imminent threats, either of which would dramatically degrade the habitat available for game animals and birds in the Preserve if left unchecked. It must also balance the competing demands of many of the focus species: Merriam's turkey need open pine and meadows in summer but dense old growth in winter; the black-backed woodpecker thrive on mountain pine beetle, which destroys the nesting habitat for brown creeper; elk benefit from open pine for foraging but need dense stands for cover. The complex and technical nature of these tradeoffs make deference to the Forest Service's assessment appropriate. See Marsh v. Oregon Natural Res. Council, 490 U.S. at 377.

Friends of the Norbeck basically advocate for no action in the Preserve, but Congress specifically authorized the use of prescribed burning and select logging to carry out the mandate of the NOA. The Forest Service seriously considered the no action alternative and provided ample explanation for why that option was inadequate to protect game animals and birds. When an agency "has considered relevant evidence and arrived at a rational result, a party's mere dissatisfaction with the

agency's decision does not entitle it to relief." <u>Cent. S.D. Coop. Grazing Dist.</u>, 266 F.3d at 898. We conclude that the Forest Service's decision to approve the Project was neither arbitrary nor capricious.

## IV.

Accordingly, we affirm the judgment of the district court.

_____