#26922-a-JKK

**2014 S.D. 92**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

    v.

ONE 2011 WHITE FOREST
RIVER XLR TOY HAULER,
VIN #4X4FXLP26B5154288,                    Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE PATRICIA C. RIEPEL
Judge

* * * *

MARTY J. JACKLEY
Attorney General

PAT ARCHER
Assistant Attorney General
Pierre, South Dakota                    Attorneys for plaintiff
                                        and appellee.


RICHARD L. JOHNSON
Sioux Falls, South Dakota               Attorney for defendant
                                        and appellant.

* * * *

CONSIDERED ON BRIEFS
ON NOVEMBER 17, 2014

OPINION FILED **12/17/14**

#26922

KONENKAMP, Justice

[¶1.]          The State initiated a civil forfeiture action against a recreational vehicle (RV) belonging to Paul Alan Lockenour. He had transported and stored methamphetamine in this RV, some of which he later sold to a confidential informant for $300. All the illicit drugs found in his possession were valued between $1,600 and $2,000. Thus, he asserted that the forfeiture of his RV, valued at $54,000, was grossly disproportionate to his crime. The State moved for summary judgment, and, after a hearing, the circuit court granted the State's motion, ruling that the forfeiture was not grossly disproportionate or unconstitutionally excessive.

**Background**

[¶2.]          Lockenour's RV, a 2011 Forest River XLR Toy Hauler, was purchased with money he inherited from his parents. Although his permanent residence was in Cambridge, Nebraska, he intended to use the RV as his residence. He had planned to travel to Daytona for "Bike Week." But he changed his plans at the request of his friend, "Lo." She asked him to come to Sioux Falls and bring methamphetamine (meth) with him. He later explained that he considered Lo a good friend, and he was willing to bring her meth to use or sell. But Lo, as Lockenour was later to learn, was a confidential informant. During their recorded telephone conversation, he told Lo he "got a lot" of meth, and she should sell it for "3 for an 8."

[¶3.]          On March 10, 2011, law enforcement officers fitted Lo with a recording device and gave her purchase money. Lo met with Lockenour, who had driven his

-1-

RV to Sioux Falls to meet her. Through the audio recording, Lo and Lockenour can be heard talking about making money and the price of the meth. Lo gave Lockenour $300 for one baggie of meth, and he gave her an additional baggie without charge. After the purchase, Lo turned over the baggies to law enforcement officers. Each baggie bore a picture of a dolphin. One weighed 3.4 grams, the other 4.1 grams, and both tested positive for meth.

[¶4.] Later that same day, Lockenour was arrested. After a search warrant was obtained, officers found 3.3 grams of meth on Lockenour's person. In the RV, they found six more baggies of meth with the same dolphin symbol, two glass pipes commonly used for smoking meth (with residue that tested positive for meth), a digital scale with meth residue on it, $300 cash (the law enforcement purchase money), and a white substance, not meth. The six additional baggies of meth weighed 3.3 grams, 3.4 grams, 3.7 grams, 1.6 grams, and 3.6 grams. The "street value" was approximately $1,600 to $2,000. During his interview with law enforcement officers, Lockenour explained that he had purchased ten, one-eighth ounce quantities of meth from a motorcycle gang in Nebraska for $2,500. He admitted to having purchased meth from this gang on previous occasions, possibly five or six times during the prior eighteen months.

[¶5.] Lockenour was charged with distribution of a controlled substance, possession of a controlled substance, and possession or use of drug paraphernalia. He pleaded guilty to distribution of a controlled substance and was sentenced to seven years in prison with two years suspended on certain conditions. The remaining criminal charges were dismissed.

[¶6.]        The State brought a civil forfeiture action against Lockenour's RV.  He answered and asserted, as an affirmative defense, that the forfeiture of his RV violated his right against excessive fines under the Eighth Amendment of the United States Constitution and Article VI, § 23 of the South Dakota Constitution. Lockenour argued that the value of the RV "far exceeds the quantity or value of any controlled drugs or substances or marijuana found in the [RV]," and its forfeiture "would be unconstitutionally disproportionate" to the value of the controlled substances.  It was undisputed the value of the RV was $54,000 and the approximate street value of the meth was $1,600 to $2,000.

[¶7.]        The State moved for summary judgment asserting that no material issue of fact was in dispute and that the circuit court need only determine whether the forfeiture of the RV was disproportionate to Lockenour's crime.  At the hearing, Lockenour conceded that his RV was subject to forfeiture under SDCL 34-20B-70(4). But he maintained that the forfeiture of a $54,000 RV for a crime involving approximately $2,000 worth of drugs was grossly disproportionate.

[¶8.]        The circuit court recognized that "[t]he amount of the forfeiture must bear some relationship to the gravity of the offense it is designed to punish." *See United States v. Bajakajian,* 524 U.S. 321, 334, 118 S. Ct. 2028, 2036, 141 L. Ed. 2d 314 (1998).  The court looked beyond the crime Lockenour pleaded guilty to and considered all the circumstances surrounding the offense.  Although Lockenour pleaded guilty to distribution of a controlled substance, he was originally charged with two additional class 4 felonies.  Therefore, he had faced a potential of $40,000 in total fines, which the court found proportionate to $54,000, the value of the RV.

The court further considered that Lockenour could have been charged with two additional class 4 felonies, which would have increased his potential fines to over $100,000. Finally, the court found that the RV was "entirely associated with the criminal activity," and the "entire transaction occurred within" the RV. Based on all these circumstances, the court ruled that Lockenour failed to make a prima facie showing of gross disproportionality. Alternatively, the court ruled that even if Lockenour had made a prima facie showing, it was not excessive because "the value of the property forfeited is within or near the permissible range of fines." *See State v. One 1995 Silver Jeep Grand Cherokee* (*Silver Jeep*), 2006 S.D. 29, ¶ 8, 712 N.W.2d 646, 651 (quoting *United States v. Dodge Caravan Grand SE*, 387 F.3d 758, 763 (8th Cir. 2004)). The circuit court granted the State summary judgment and ordered forfeiture.

## Analysis and Decision

[¶9.] On appeal, Lockenour maintains that the forfeiture of his RV is grossly disproportionate to his crime. He contends that he made a prima facie showing of gross disproportionality because his RV was valued at $54,000, and the value of the meth he had was between $1,600 and $2,000. There was no evidence that he distributed meth to anyone other than Lo or that he sold meth out of the RV at any other time. He claims he "had no predisposition to come to Sioux Falls and sell methamphetamine" until Lo, "working as a confidential informant, induced him to come to Sioux Falls." Moreover, he believes that there was "no harm caused" by his conduct "because the distribution of methamphetamine was a 'controlled buy.'"

[¶10.] In *Silver Jeep*, we acknowledged that "[t]he amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish." *Id.* ¶ 7 (quoting *Bajakajian*, 524 U.S. at 334, 118 S. Ct. at 2036) (internal quotation mark omitted). A forfeiture is unconstitutionally excessive when it is grossly disproportionate to the offense. Following the Eighth Circuit Court of Appeals, we employ a two-step approach to assess gross disproportionality in a forfeiture action. *Id.* (citing *Dodge Caravan Grand SE*, 387 F.3d at 763). "First, the claimant must 'make a prima facie showing of gross disproportionality;' and, second, if the claimant can make such a showing, 'the court considers whether the disproportionality reaches such a level of excessiveness that in justice the punishment is more criminal than the crime.'" *Id.* "To determine whether the facts indicate gross disproportionality, the [trial] court must consider multiple factors, including the extent and duration of the criminal conduct, the gravity of the offense weighed against the severity of the criminal sanction, and the value of the property forfeited." *United States v. Bieri*, 68 F.3d 232, 236 (8th Cir. 1995) (citation omitted); *Silver Jeep*, 2006 S.D. 29, ¶ 8, 712 N.W.2d at 650-51.

[¶11.] Here, the duration of the criminal conduct was eighteen months. By his own admission, Lockenour began buying meth from a motorcycle gang eighteen months before he sold it to Lo, and though he claimed he purchased the meth only for his personal use, using and possessing meth is a crime. Moreover, despite his claim that he had no intent to distribute meth, it is undisputed that he drove to Sioux Falls specifically to distribute meth to Lo. He also gave Lo meth for her to sell. And he had a digital scale with meth residue and additional baggies bearing a

dolphin picture. Thus, the extent of his criminal conduct cannot be isolated to a single incident. As to his claim that "no harm was caused" by his conduct, he sought to put an injurious substance in the Sioux Falls community. Meth is toxic and highly addictive. Societal detriments associated with meth are substantial, not the least of which is its ruin of human health and wellbeing, and the costs for law enforcement, addiction treatment, and imprisonment. The Legislature has deemed distribution of meth punishable as a class 4 felony, thereby identifying it as a serious criminal offense. *See* SDCL 22-42-2.

[¶12.] "A court must consider the entire circumstances surrounding the offense that led to the forfeiture when assessing gross disproportionality." *Silver Jeep*, 2006 S.D. 29, ¶ 11, 712 N.W.2d at 652 (citation omitted). As one court remarked, "Translating the gravity of a crime into monetary terms — such that it can be proportioned to the value of forfeited property — is not a simple task." *United States v. 817 N.E. 29th Drive, Wilton Manors, Fla.*, 175 F.3d 1304, 1309 (11th Cir. 1999). Nonetheless, we are guided by our statutes setting forth the range of permissible fines for certain offenses. "Criminal fines are particularly relevant as they reflect judgments made by the [L]egislature about the appropriate punishment for an offense." *Silver Jeep*, 2006 S.D. 29, ¶ 8, 712 N.W.2d at 651 (citation omitted); *817 N.E. 29th Drive, Wilton Manors, Fla.*, 175 F.3d at 1309-10; *see also Bajakajian*, 524 U.S. at 337, 118 S. Ct. at 2037. Courts have consistently held that "'if the value of the property forfeited is within or near the permissible range of fines . . . the forfeiture is almost certainly not excessive.'" *Silver Jeep*, 2006 S.D. 29, ¶ 8, 712 N.W.2d at 651 (quoting *Dodge Caravan Grand SE*, 387 F.3d at 763); *Bajakajian*,

524 U.S. at 336, 118 S. Ct. at 2037.  Based on our assessment of all the circumstances, the forfeiture of Lockenour's RV, valued at $54,000, was not grossly disproportionate to the gravity of his offense.  Therefore, the circuit court did not err when it granted summary judgment and ruled that the forfeiture did not violate the Eighth Amendment of the United States Constitution or Article VI, § 23 of the South Dakota Constitution.

[¶13.]        Affirmed.

[¶14.]        GILBERTSON, Chief Justice, and ZINTER, SEVERSON, and WILBUR, Justices, concur.