# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-1335

_____

Bettor Racing, Inc.; J. Randy Gallo

*Plaintiffs - Appellants*

v.

National Indian Gaming Commission

*Defendant - Appellee*

Flandreau Santee Sioux Tribe

*Intervenor Defendant - Appellee*

_____

Appeal from United States District Court
for the District of South Dakota - Sioux Falls

_____

Submitted: October 20, 2015
Filed: January 29, 2016

_____

Before MURPHY, COLLOTON, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

The National Indian Gaming Commission ("NIGC") fined Bettor Racing, Inc.
$5 million for violations of the Federal Indian Gaming Regulatory Act. The Act

requires NIGC to approve all contracts for the operation of gaming activities at tribal casinos. **25 U.S.C. § 2711(a)**. Contract approval "shall be evidenced by a Commission document dated and signed by the chairman. No other means of approval shall be valid." **25 C.F.R. § 533.1(b)**. "[T]he regulations mandate that any management contract that does not receive approval is void, and that any attempted modification of an approved contract that does not comply with the regulations and does not receive approval, is also void." *Turn Key Gaming, Inc. v. Oglala Sioux Tribe*, 164 F.3d 1092, 1094 (8th Cir. 1999). The Act further requires tribes to maintain the "sole proprietary interest" in the gaming activities; management contractors cannot collect more than 30% (or in some cases 40%) of the net revenues. **§§ 2710(b)(2)(A)**, **2711(c)**.

Bettor Racing contracted to operate its pari-mutuel betting business at the casino of the Flandreau Santee Sioux Tribe. NIGC did not approve the contract until after Bettor Racing had begun operating at the casino. The parties made two modifications to the contract, creating a check-swap scheme: Bettor Racing would pay the full amount due under the initial contract and the Tribe would repay Bettor Racing with a "bonus." NIGC approved neither. Under the check-swap scheme, Bettor Racing received more than 40% of the net revenues.

NIGC sent a "Notice of Violation" to the Tribe and Bettor Racing. The Tribe settled with NIGC; Bettor Racing did not. NIGC found Bettor Racing had committed three violations of the Act: (1) managing a tribal gaming operation without an approved management contract, (2) operating under unapproved modifications, and (3) holding a proprietary interest in the pari-mutuel betting operation. The Notice offered Bettor Racing the chance to correct the violations by reimbursing the Tribe $4,544,755.[1] Bettor Racing did not make this payment. NIGC issued a Civil-Fine Assessment, fining Bettor Racing $5 million for the three violations. Bettor Racing

---

[1] Bettor Racing paid an uncontested $1,081,578 to the tribe, so the total amount due under the Notice was $3,463,177.

-2-

appealed the Notice and Civil-Fine Assessment. The Office of Hearing Examiners granted summary judgment to NIGC.

Bettor Racing sought judicial review, arguing NIGC (1) acted arbitrarily and capriciously in finding the three violations, (2) acted arbitrarily and capriciously and in violation of the Eighth Amendment in setting the fine, and (3) denied Bettor Racing due process by making the determinations without holding a hearing. The Tribe intervened. On cross-motions for summary judgment, the district court[2] dismissed the case. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

This court reviews *de novo* a district court's decision on whether an agency action violates the Administrative Procedure Act. ***Friends of the Norbeck v. United States Forest Serv.***, 661 F.3d 969, 975 (8th Cir. 2011). An agency's decision is set aside only if "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." **5 U.S.C. § 706(2)(A)**. A decision is arbitrary and capricious if

> the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

***Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.***, 463 U.S. 29, 43 (1983). This court will not substitute its own judgment so long as the agency has "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action

---

2 The Honorable Karen E. Schreier, United States District Judge for the District of South Dakota.

including a rational connection between the facts found and the choice made." *Id.* (quotation omitted).

## II.

Bettor Racing challenges the three violations, insisting it acted without requisite scienter because the Tribe represented that NIGC had approved the initial contract, modifications, and check-swap scheme. Rejecting this argument, NIGC concluded that scienter "is neither expressly nor impliedly required to establish wrongful intent or intent to violate the law. In other words, the lack of knowledge cannot be raised as an affirmative defense."

NIGC has the authority to "levy and collect appropriate civil fines . . . against . . . a management contractor engaged in gaming for *any violation. . . .*" **25 U.S.C. § 2713(a)(1)** (emphasis added). The Act is silent as to scienter. NIGC's interpretation controls unless "arbitrary, capricious, or manifestly contrary to the statute." *TeamBank, N.A. v. McClure*, 279 F.3d 614, 619 (8th Cir. 2002), *quoting Chevron, U.S.A. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844 (1984).

By the Act's plain language, no scienter is required to establish a violation under § 2713. *Cf.* **§ 2711(e)(1)(C)** (prohibiting NIGC from approving a management contract if a party has "knowingly and willfully" provided materially important false statement). Nor is scienter required to justify a fine. *See, e.g.*, *Northern Wind, Inc. v. Daley*, 200 F.3d 13, 19 (1st Cir. 1999) ("As a general matter, scienter is not required to impose civil penalties for regulatory violations when the regulation is silent as to state of mind."). Instead, NIGC considers scienter when determining the seriousness of the violation, and thereby the amount of the fine. **25 C.F.R. § 575.4(d)** ("The Chairman may adjust the amount of a civil fine based on the degree of fault of the respondent in causing or failing to correct the violation, either through act or omission."). This is a permissible construction of the statute. *See Chevron*, 467 U.S. at 843.

Absent a scienter requirement, the undisputed facts establish the violations. Bettor Racing operated its pari-mutuel betting business at the Tribe's casino without an NIGC-approved contract for about six months. During this time, a "consulting agreement" stated Bettor Racing "will manage the Tribe's pari-mutuel operation pursuant to this agreement and not under the management agreement that is currently under consideration by the National Indian Gaming Commission." Bettor Racing and the Tribe twice modified the contract; NIGC approved neither. The modifications created a check-swap scheme. Bettor Racing paid the Tribe the full amount due under the original agreement—an amount within the parameters of the Act. The tribe then immediately paid Bettor Racing a "bonus," making Bettor Racing's share of the net revenues 65% to 78% between 2004 and 2007. *See also City of Duluth v. Fond du Lac Band of Lake Superior Chippewa*, 830 F. Supp. 2d 712, 723 (D. Minn. 2011), *reversed in part on other grounds by City of Duluth v. Fond du Lac Band of Lake Superior Chippewa*, 702 F.3d 1147 (8th Cir. 2013) (identifying three factors considered by NIGC in determining who has the sole proprietary interest in a gaming operation: (1) the term of the relationship, (2) the amount of revenue paid to the third party, and (3) the right of control provided to the third party over the gaming activity).

These facts support NIGC's finding that Bettor Racing (1) operated without an NIGC-approved management contract, (2) operated under two unapproved modifications, and (3) held the sole proprietary interest in the gaming operations.

The district court did not err in upholding the charged violations.

III.

The Indian Gaming Act authorizes fines of up to $25,000 per violation, per day. **§ 2713(a)(1)**. Here, NIGC imposed a $5 million fine. Bettor Racing argues this was not only arbitrary and capricious, but also in violation of the Eighth Amendment.

The NIGC is required to consider five factors in setting a fine for violations of the Act: (1) economic benefit of noncompliance, (2) seriousness of the violation, (3) history of violations, (4) negligence or willfulness, and (5) good faith after notification of the violation. **25 C.F.R. § 575.4**. The Eighth Amendment requires a similar analysis of whether the alleged disproportionality is "excessive." *See* ***United States v. Dodge Caravan Grand SE/Sport Van***, 387 F.3d 758, 763 (8th Cir. 2004). "[I]f the value of the property forfeited is within or near the permissible range of fines . . . the forfeiture almost certainly is not excessive." ***Id.***

NIGC recognized that Bettor Racing has not previously violated the Act. However, other factors weigh against Bettor Racing. First, Bettor Racing has profited from the violations by about $4.5 million. Second, the regulations explicitly identify operating without an approved contract as a "substantial violation[]." **25 C.F.R. § 573.4(a)(7)**. Third, the check-swap scheme violates the Act's stated policy of ensuring "that the Indian tribe is the primary beneficiary of the gaming operation" and protecting gaming "as a means of generating tribal revenue." **25 U.S.C. § 2702**. Fourth, Bettor Racing did not act with ordinary care in structuring its relationship with the Tribe. Bettor Racing's president testified he knew about the statutory limit on revenue and that the gaming license depended on NIGC's approval of the management contract. Fifth, Bettor Racing did not in good faith comply with the Notice of Violation; it never reimbursed the tribe for the full amount due under the management contract. Finally, the fine imposed is substantially less than the statutory maximum.

The district court did not err in finding the fine both reasonable and constitutional.

## IV.

Bettor Racing contends NIGC violated its right to due process when the agency dismissed the case on summary judgment without a hearing. Whether an agency's action violates the constitution is reviewed *de novo*. ***Business Commc'ns, Inc. v.***

***U.S. Dept. of Educ.***, 739 F.3d 374, 379 (8th Cir. 2013). "Due process prevents government actors from depriving persons of liberty or property interests without providing certain safeguards." ***Id.***, *citing* ***Mathews v. Elridge***, 424 U.S. 319, 332 (1976). Due process calls only for "protections as the particular situation demands." *Mathews*, 424 U.S. at 334. Due process does not always require "a hearing closely approximating a judicial trial. . . ." ***Id.*** at 333.

This is not a case where "the evidence consists of testimony of individuals whose memory might be faulty or who, in fact, might be perjurers or persons motivated by malice, vindictiveness, intolerance, prejudice, or jealousy." ***Business Commc'ns***, 739 F.3d at 380 (holding due process required an opportunity for cross-examination when the decision depended "on the credibility of individual witness testimony. . . ."). Rather, to reach its conclusion, NIGC relied on undisputed facts, including the testimony of Bettor Racing's president. Summary judgment without a hearing was appropriate.

\* \* \* \* \* \* \*

The district court's decision is affirmed.

_____