**UNITED STATES of America,
Plaintiff,**

v.

**Martin T. SIGILLITO, Defendant.**

**No. 11–CR–168–LRR.**

United States District Court,
E.D. Missouri,
Eastern Division.

Oct. 18, 2012.

Jess E. Michaelsen, United States Attorney's Office, Western District of Missouri, Kansas City, MO, Richard E. Finneran, Steven E. Holtshouser, Office of U.S. Attorney, St. Louis, MO, for Plaintiff.

Douglas P. Roller, Roller Law Office, LLC, St. Louis, MO, for Defendant.

## ORDER

LINDA R. READE, Chief Judge.

### TABLE OF CONTENTS

I. INTRODUCTION ................................................853

II. RELEVANT PROCEDURAL BACKGROUND .............................853

III. RELEVANT FACTUAL BACKGROUND ................................854

IV. APPLICABLE LAW ............................................854

V. ANALYSIS ...................................................856
   A. Applicability of Southern Union .....................857
     1. Relevant Supreme Court precedent ................857
       a. Decisions addressing criminal forfeiture ......857
       b. Apprendi and its progeny ......................858
     2. Parties' arguments ..............................859
     3. Analysis ........................................859
       a. Waiver ........................................859
       b. Right to jury determination ...................860
   B. Statute of Limitations ..............................861
   C. Legitimate Income ..................................862
   D. Objections to Particular Items as "Proceeds" ........863
   E. Substitute Assets, Including a Money Judgment .......864
     1. Extent of Defendant's liability .................864
     2. Requirements under 21 U.S.C. § 853(p) ...........865
   F. Eighth Amendment ...................................866

VI. CONCLUSION .................................................868

### I. INTRODUCTION

The matter before the court is the government's "Motion ... for Preliminary Order of Forfeiture" ("Motion") (docket no. 276).

### II. RELEVANT PROCEDURAL BACKGROUND

On April 28, 2011, the government filed a twenty-two count Indictment (docket no. 2) against Defendant. Counts 1 through 9 charged Defendant with committing wire fraud in violation of 18 U.S.C. §§ 1343 and 2(b). Counts 10 through 15 charged Defendant with committing mail fraud in violation of 18 U.S.C. §§ 1341 and 2(b). Count 16 charged Defendant with conspir-acy to commit mail and wire fraud in violation of 18 U.S.C. § 371. Finally, Counts 17 through 22 charged Defendant with engaging in and attempting to engage in money laundering transactions in violation of 18 U.S.C. §§ 1957 and 2(b).

The Indictment also contains forfeiture allegations. Specifically, the Indictment alleges that Defendant should forfeit to the United States "any property, real or personal, constituting or derived from any proceeds traceable" to the mail fraud, wire fraud and conspiracy to commit mail and wire fraud offenses. Indictment at 25. Such forfeiture is authorized by 18 U.S.C. § 981(a) and 28 U.S.C. § 2461(c). The Indictment also alleges that Defendant

should forfeit to the United States "any property, real or personal, involved in [the money laundering offenses], or any property traceable to such property." Indictment at 25. Such forfeiture is authorized by 18 U.S.C. § 982(a)(1). The forfeiture allegations incorporate Appendix A to the Indictment,[1] which contains a list of specific properties the government contends are traceable to the mail fraud, wire fraud, conspiracy to commit mail and wire fraud and money laundering offenses.

On March 19, 2012, a jury trial on Counts 1 through 22 commenced. On April 9, 2012, at the close of the government's evidence, the government moved to dismiss Counts 14 and 15, and the court granted the motion. On that same date, Defendant waived his right to have the jury decide whether the specific properties listed in Appendix A to the Indictment are subject to forfeiture. *See* Fed.R.Crim.P. 32.2(b)(5)(A). The case was submitted to the jury, and, on April 13, 2012, the jury returned guilty verdicts on Counts 1 through 13 and 16 through 22.

On May 22, 2012, the government filed the instant Motion seeking a forfeiture determination. On June 25, 2012, Defendant filed a Resistance (docket no. 295). On July 9, 2012, the government filed a Reply (docket no. 301) to Defendant's Resistance. On July 26, 2012, Defendant filed a Supplemental Forfeiture Memorandum (docket no. 315) addressing the impact of a recent United States Supreme Court case, *Southern Union Co. v. United States,* — U.S. —, 132 S.Ct. 2344, 183 L.Ed.2d 318 (2012). On August 9, 2012, the government filed a Response (docket no. 330) to Defendant's Supplemental Forfeiture Memorandum. On August 20, 2012, Defendant filed a Reply (docket no. 336) to the government's Response to De-

fendant's Supplemental Forfeiture Memorandum. On September 27, 2012, the parties filed a "Joint Statement of Issues and Objections Relating to Forfeiture Determination" ("Joint Statement of Issues") (docket no. 356) and a "Chart of Items Sought for Forfeiture and Objections Thereto" (docket no. 355–1).

On October 3, 2012, the court held a hearing. Assistant United States Attorneys Steven E. Holtshouser, Jess E. Michaelsen and Richard E. Finneran represented the government. Attorney Douglas P. Roller represented Defendant. The court finds that the matter is fully submitted and ready for decision.

### III. RELEVANT FACTUAL BACKGROUND

The court incorporates the summary of the trial evidence set forth in its August 7, 2012 Order (docket no. 325). In pertinent part, the trial evidence established that Defendant organized and operated a fraudulent loan program that induced individuals to loan money to Derek J. Smith, a real estate developer, for purported land purchases in England. The loan program was known as the "British Lending Program," or BLP. After Defendant and his co-conspirators deducted fees from a new investment, the remaining balance of the investment was primarily used to pay interest or principal to other investors. Between 2000 and the time the BLP collapsed in 2010, Defendant defrauded approximately 140 individuals out of approximately $51,568,087.17. *See* BLP Lender Summary—Main, Government Trial Exhibit 102 at 3.

### IV. APPLICABLE LAW

Pursuant to Federal Rule of Criminal Procedure 32.2(b)(1)(A):

---

1. Pursuant to the court's instruction, on September 27, 2012, the government filed a renumbered Appendix A (docket no. 355–2), which assigns each property a unique identifying number.

As soon as practical after a verdict or finding of guilty ... on any count in an indictment ... regarding which criminal forfeiture is sought, the court must determine what property is subject to forfeiture under the applicable statute. If the government seeks forfeiture of specific property, the court must determine whether the government has established the requisite nexus between the property and the offense. If the government seeks a personal money judgment, the court must determine the amount of money that the defendant will be ordered to pay.

Fed.R.Crim.P. 32.2(b)(1)(A).

In this case, forfeiture is authorized under 28 U.S.C. § 2461(c) and 18 U.S.C. § 981(a)(1)(C).[2] Pursuant to 28 U.S.C. § 2461(c):

If a person is charged in a criminal case with a violation of an Act of Congress for which the civil or criminal forfeiture of property is authorized, the Government may include notice of the forfeiture in the indictment.... If the defendant is convicted of the offense giving rise to the forfeiture, the court shall order the forfeiture of the property as part of the sentence in the criminal case....

28 U.S.C. § 2461(c); *see also United States v. Jennings*, 487 F.3d 564, 584–85 (8th Cir.2007) (discussing 28 U.S.C. § 2461(c)). Civil forfeiture of mail fraud, wire fraud and conspiracy to commit mail and wire fraud proceeds is authorized by 18 U.S.C. § 981(a)(1)(C), which provides that "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to ... any offense constituting 'specified unlawful activity' (as de-

fined in [18 U.S.C. § 1956(c)(7) ] ), or a conspiracy to commit such offense" is subject to forfeiture. 18 U.S.C. § 981(a)(1)(C). "Specified unlawful activity" includes mail and wire fraud. *See* 18 U.S.C. § 1956(c)(7) (incorporating by reference the offenses in 18 U.S.C. § 1961(1)). Thus, forfeiture is authorized in this case and, under 28 U.S.C. § 2461(c), it is a mandatory part of sentencing.

Therefore, under the applicable statutes, the court must order Defendant to forfeit all "proceeds" of his mail fraud, wire fraud and conspiracy to commit mail and wire fraud offenses. Under 18 U.S.C. § 981(a)(2), "proceeds" is defined in one of two ways:

(A) In cases involving illegal goods, illegal services, unlawful activities, and telemarketing and health care fraud schemes, the term "proceeds" means property of any kind obtained directly or indirectly, as the result of the commission of the offense giving rise to forfeiture, and any property traceable thereto, and is not limited to the net gain or profit realized from the offense.

(B) In cases involving lawful goods or lawful services that are sold or provided in an illegal manner, the term "proceeds" means the amount of money acquired through the illegal transactions resulting in the forfeiture, less the direct costs incurred in providing the goods or services. The claimant shall have the burden of proof with respect to the issue of direct costs. The direct costs shall not include any part of the overhead expenses of the entity providing the

---

**2.** The government states that it is not pursuing forfeiture under 18 U.S.C. § 982(a)(1), which authorizes forfeiture of property involved in or traceable to a money laundering offense, "[b]ecause all property forfeitable under that provision is equally available under" 18 U.S.C. § 981(a)(1)(C). Motion at 2 n. 1. Therefore, the court will only address 18 U.S.C. § 981(a)(1)(C).

goods or services, or any part of the income taxes paid by the entity.

18 U.S.C. § 981(a)(2).

■ A preponderance of the evidence standard applies to forfeitures under 28 U.S.C. § 2461(c).[3] *See* 28 U.S.C. § 2461(c) (stating that the procedures outlined in 21 U.S.C. § 853 apply to criminal forfeiture proceedings under 28 U.S.C. § 2461(c)); *United States v. Bieri,* 21 F.3d 819, 822 (8th Cir.1994) (holding that a preponderance of the evidence standard applies to criminal forfeiture proceedings under 21 U.S.C. § 853); *cf. United States v. Myers,* 21 F.3d 826, 829 (8th Cir.1994) (holding that a preponderance of the evidence standard applies to forfeiture proceedings under 18 U.S.C. § 982(a)(1)).

## V. ANALYSIS

In the Motion, the government requests that the court order Defendant to forfeit 670 specific properties listed in Appendix A to the Indictment and enter a personal money judgment against Defendant in the amount of $51,568,087.17.[4] The government has grouped the 670 specific properties into five categories, as summarized in the table below:

| Group | Nature of Evidence | Number of Items |
|-------|--------------------|-----------------|
| A | Items whose forfeitability is established by *direct evidence* that the property constitutes or is derived from fraud proceeds. | 7 |
| B | Items whose forfeitability is established by circumstantial evidence relating to *lack of legitimate income* and date of purchase as reflected in a *receipt or invoice.* | 148 |
| C | Items whose forfeitability is established by circumstantial evidence relating to *lack of legitimate income* and date of purchase as reflected by date of addition to an *insurance list.* | 57 |
| D | Items whose forfeitability is established by circumstantial evidence relating to *lack of legitimate income* and date of purchase as reflected by the items' *location at the time of seizure.* | 430 |
| E | Items whose forfeitability is established by circumstantial evidence relating to *lack of legitimate income* and date of purchase as suggested by *the nature of the item itself.* | 28 |

Memorandum in Support of Motion at 7. To the extent the court should find that any of the 670 specific properties are not proceeds, the government requests that the court order Defendant to forfeit the properties as substitute assets pursuant to 21 U.S.C. § 853(p).

In the Joint Statement of Issues, the parties identify six issues[5] for the court to decide: (1) whether a recent Supreme

---

**3.** The court recognizes that, in connection with his arguments regarding *Southern Union,* Defendant contends that a higher standard applies. The court shall address Defendant's argument below.

**4.** The government notes that "[t]he amount of any money judgment will of course ultimately be reduced by any funds received from the sale of the property forfeited under the [c]ourt's order, whether forfeited as proceeds or as substitute assets, as well as any funds recovered from the sale of property forfeited from the other defendants." Memorandum in Support of Motion (docket no. 278) at 16 n. 4.

**5.** The parties list seven issues for the court to address; however, the court shall address what constitutes "proceeds" and the appropriate amount of the personal money judgment in conjunction with its discussion of substitute assets.

Court decision, *Southern Union,* applies to forfeiture determinations; (2) whether the statute of limitations applicable to mail and wire fraud impacts the forfeiture determination; (3) whether Defendant had legitimate income during the early years of the BLP; (4) whether eleven specific properties Defendant identifies are proceeds of the BLP; (5) whether the government has satisfied the requirements under 21 U.S.C. § 853(p) for substitute assets and whether a $51,568,087.17 money judgment is appropriate; and (6) whether the forfeiture amount violates the Eighth Amendment's prohibition against excessive fines. The court will examine each issue in turn.

### A. Applicability of Southern Union

First, Defendant argues that a recent Supreme Court decision, *Southern Union,* applies to forfeitures and, consequently, the court cannot impose a forfeiture sentence in this case without running afoul of his Sixth Amendment right to a jury trial. Because Defendant argues that an earlier Supreme Court decision, *Libretti v. United States,* 516 U.S. 29, 116 S.Ct. 356, 133 L.Ed.2d 271 (1995), has been abrogated, at least in part, by more recent decisions, including *Southern Union,* the court first briefly examines the applicable Supreme Court precedent, beginning with *Libretti* and ending with *Southern Union.* Next, the court summarizes the parties' arguments. Finally, the court addresses the government's contention that Defendant waived any right to a jury determination of forfeiture and then turns to the ultimate issue raised by Defendant—whether he has a Sixth Amendment right to a jury verdict on the forfeiture allegations.

#### 1. Relevant Supreme Court precedent

The court begins by briefly examining the Supreme Court cases that the parties cite in support of their respective arguments and that the court ultimately relies on in its analysis. First, the court summa-rizes two Supreme Court cases dealing specifically with the issue of criminal forfeiture. Then, the court turns to the line of cases beginning with the Supreme Court's seminal decision in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and ending with the principal case Defendant relies on, *Southern Union.*

#### a. Decisions addressing criminal forfeiture

On November 7, 1995, the Supreme Court decided *Libretti v. United States,* 516 U.S. at 29, 116 S.Ct. 356, which addressed a defendant's argument that the district court was required to advise him during his plea colloquy that he was waiving his right to a jury determination as to the forfeitability of certain property. *Id.* at 48, 116 S.Ct. 356. The Supreme Court held that, although former Federal Rule of Criminal Procedure 31(e) created a statutory right to a jury verdict on criminal forfeiture allegations, there is no corresponding Sixth Amendment right: "Without disparaging the importance of the right provided by Rule 31(e), our analysis of the nature of criminal forfeiture as an aspect of sentencing compels the conclusion that the right to a jury verdict on forfeitability does not fall within the Sixth Amendment's constitutional protection." *Id.* at 49, 116 S.Ct. 356. Consequently, because the right was merely statutory rather than constitutional in origin, the Supreme Court concluded that the district court was not required to specifically advise the defendant during the plea colloquy that he had a right to a jury determination on the forfeitability of certain property. *Id.*

Nearly three years after its decision in *Libretti,* the Supreme Court decided another case analyzing the applicability of constitutional protections to criminal forfeiture determinations. In *United States*

*v. Bajakajian,* 524 U.S. 321, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998), the Supreme Court held that a punitive forfeiture constitutes a "fine" within the meaning of the Eighth Amendment's Excessive Fines Clause. *Id.* at 327–28, 118 S.Ct. 2028. In *Bajakajian,* the defendant was charged with failing to report that he was transporting more than $10,000 out of the United States. *Id.* at 325, 118 S.Ct. 2028. The government sought the forfeiture of $357,-144—the total amount the defendant failed to report. *Id.* After concluding that the Eighth Amendment's Excessive Fines Clause was applicable, *id.* at 334, 118 S.Ct. 2028, the Supreme Court held that such a forfeiture amount was excessive given that the defendant was guilty of a single reporting violation unconnected with other illegal activity, *id.* at 337–40, 118 S.Ct. 2028.

### b. Apprendi *and its progeny*

■ On June 26, 2000, the Supreme Court held in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, that there is a Sixth Amendment right to have a jury determine facts that increase the applicable statutory maximum sentence. *Id.* at 490, 120 S.Ct. 2348. In *Apprendi,* the defendant was charged with, among other offenses, possessing a firearm for an unlawful purpose. *Id.* at 469–70, 120 S.Ct. 2348. Ordinarily, the statute carried a maximum sentence of ten years; however, if the defendant committed the offense with a "biased" purpose, a "hate crime" enhancement applied and the maximum sentence was twenty years. *Id.* at 470, 120 S.Ct. 2348. The defendant argued that he had a constitutional right to have a jury determine, beyond a reasonable doubt, whether the offense was committed with a "biased" purpose such that the twenty-year maximum sentence applied. *Id.* at 471, 120 S.Ct. 2348. The Supreme Court agreed and held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490, 120 S.Ct. 2348.

■ After *Apprendi,* the Supreme Court decided a line of cases that explained and clarified what facts must be submitted for jury determination. For example, in *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), the Supreme Court held that the "'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings." *Id.* at 303–04, 124 S.Ct. 2531 (emphasis omitted) (citations omitted); *see also Oregon v. Ice,* 555 U.S. 160, 164, 129 S.Ct. 711, 172 L.Ed.2d 517 (2009) (holding that the Sixth Amendment, as construed in *Apprendi,* does not require juries to determine facts warranting the imposition of consecutive, rather than concurrent, sentences for multiple offenses); *United States v. Booker,* 543 U.S. 220, 259, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) (invalidating the portion of the Federal Sentencing Act that established mandatory sentencing guidelines).

■ Finally, at issue in this case, is the Supreme Court's June 21, 2012 decision in *Southern Union,* 132 S.Ct. 2344. In *Southern Union,* the Supreme Court held that the Sixth Amendment gives defendants the right to have a jury determine, beyond a reasonable doubt, facts that would increase the maximum criminal fine a court could impose at sentencing. *Id.* at 2348–49. The case arose when Southern Union Company ("Southern Union"), a natural gas distributor, stored mercury in

a facility without first acquiring a permit. *Id.* at 2349. A grand jury indicted the company with violating, among other statutes, the Resource Conservation and Recovery Act of 1976. *Id.* A violation of the Act is punishable by a fine of up to $50,000 per day of violation. *Id.* Southern Union proceeded to trial and, ultimately, a jury convicted the company of violating the Act. *Id.* The jury, however, was not asked to make a specific finding as to how many days Southern Union was in violation of the Act. *Id.* At sentencing, the district court judge found that Southern Union violated the Act for a total of 762 days, which resulted in a criminal fine of $38.1 million. *Id.* Southern Union argued that *Apprendi* applies to criminal fines, and, thus, the maximum fine allowable was $50,000 because the jury had not made a specific finding as to the number of days Southern Union violated the statute. *Id.* The case was ultimately heard by the Supreme Court, which agreed that *Apprendi* applies to criminal fines. *Id.* at 2357.

### 2. Parties' arguments

In this case, Defendant asks the court to extend *Southern Union*'s holding to forfeiture determinations. Defendant contends that, because the Supreme Court previously determined in *Bajakajian* that "forfeiture is a punishment equivalent to a criminal fine," the rule in *Apprendi*, as explained in *Southern Union*, applies to forfeiture determinations. Defendant's Supplemental Forfeiture Memorandum at 1 (citing *Bajakajian*, 524 U.S. at 327–28, 118 S.Ct. 2028). Consequently, Defendant argues that the court should deny the Motion.

In its Response to Defendant's Supplemental Forfeiture Memorandum, the government argues that: (1) Defendant waived his right to have the jury address forfeiture; (2) "the Supreme Court has recognized that the Constitution does not require a determination of forfeiture by the jury in two separate cases, [*Libretti*] and [*Booker*]"; (3) circuit court precedent establishes that there is no statutory maximum for forfeiture and, thus, *Apprendi* cannot apply; and (4) juries historically have not determined forfeiture. Response to Defendant's Supplemental Forfeiture Memorandum at 1–11. Alternatively, the government argues that the jury found beyond a reasonable doubt that Defendant acquired two properties, the Marthasville house (Property # 670) and the 2006 Volvo (Property # 516), with BLP proceeds because those properties were the subjects of two of the money laundering counts, Counts 17 and 21. Finally, the government requests that, "[a]s a [p]recaution," the court make its forfeiture determination using the reasonable doubt standard. *Id.* at 12 (emphasis omitted).

In his Reply, Defendant argues that he did not waive his right to have the jury make the forfeiture determination beyond a reasonable doubt; rather, at the time he elected to have the court make the forfeiture determination under Federal Rule of Criminal Procedure 32.2, he only waived his right to have the jury decide the issue using the preponderance of the evidence standard. Defendant also argues that *Libretti* has been abrogated by *Apprendi* and its progeny and pre-*Southern Union* circuit court precedent does not "preclude the position advanced by Defendant." Reply to Government's Response to Defendant's Supplemental Forfeiture Memorandum at 6. Finally, Defendant contends that "[t]he government's reliance on common law forfeiture upon conviction as applicable to the present case is ... misplaced." *Id.* at 7.

### 3. Analysis
#### a. Waiver

First, the government argues that Defendant waived his right to a jury verdict

on the forfeiture determination. In support of its argument, the government relies on *United States v. Hively,* 437 F.3d 752 (8th Cir.2006). In *Hively,* the defendant challenged the district court's forfeiture order on the basis that, under *Booker* and *Blakely,* he was entitled to a jury determination on the forfeiture allegations. *Id.* at 763. The Eighth Circuit Court of Appeals rejected the defendant's argument, in part, because the defendant had not requested a jury determination under Federal Rule of Criminal Procedure 32.2(b) and the defendant had not objected to the forfeiture order when the district court first issued it. *Id.*

The court recognizes that, like the defendant in *Hively,* Defendant elected to have the court, as opposed to the jury, "determine the forfeitability of specific property if [the jury] return[ed] a guilty verdict." Fed.R.Crim.P. 32.2(b)(5)(A). The statutory right guaranteed under Rule 32.2, however, is the right to have the jury determine by a preponderance of the evidence whether certain property is subject to forfeiture. Defendant aptly points out that, under *Apprendi* and its progeny, the higher reasonable doubt standard applies. The court, however, finds it unnecessary to determine whether Defendant waived his right to a jury verdict on the forfeiture determination because, as set forth below, there is no Sixth Amendment right to a jury verdict on forfeiture allegations.

### b. Right to jury determination

■ After a review of the applicable case law, the court finds that Defendant does not have a Sixth Amendment right to a jury verdict on the forfeiture allegations in the Indictment. The court reaches this conclusion for two reasons: (1) the Supreme Court's decision in *Libretti* forecloses Defendant's argument; and (2) even if *Libretti* were not binding law, *Apprendi* and its progeny do not apply because there

is no statutory maximum applicable to criminal forfeiture.

■ First, this court is bound by prior Supreme Court precedent. In *Libretti,* the Supreme Court held that a defendant does not have a Sixth Amendment right to a jury trial on forfeiture allegations. *Libretti,* 516 U.S. at 49, 116 S.Ct. 356. The court recognizes that there appears to be some tension between the rationale in *Libretti* and the subsequent *Apprendi* line of cases. *See, e.g., United States v. Leahy,* 438 F.3d 328, 331 (3d Cir.2006) (en banc) (recognizing tension between *Booker* and *Libretti* ). Nevertheless, the Supreme Court has not explicitly overruled *Libretti,* and, accordingly, the court is bound by its holding. *See United States v. Ortiz–Cintron,* 461 F.3d 78, 82 (1st Cir.2006) (finding that the defendant waived his right to a jury trial on the forfeiture issue but noting that, "[e]ven without waiver, we would be bound—unless and until it is overruled by the Supreme Court—by *Libretti,* holding that the Sixth Amendment does not apply to 'criminal forfeiture as an aspect of sentencing' " (quoting *Libretti,* 516 U.S. at 49, 116 S.Ct. 356) (citation omitted)); *Leahy,* 438 F.3d at 333 ("[W]e join our sister Courts of Appeals and hold that, even after *Booker,* the Sixth Amendment's trial by jury protection does not apply to forfeiture, as *Libretti* remains Supreme Court authority by which we are bound."); *United States v. Fruchter,* 411 F.3d 377, 380 (2d Cir.2005) (noting that the holding in *Libretti* is binding "even if it might appear 'to rest on reasons rejected in some other line of decisions' " (quoting *Rodriguez de Quijas v. Shearson/Am. Express, Inc.,* 490 U.S. 477, 484, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989))); *cf. United States v. Torres–Alvarado,* 416 F.3d 808, 810 (8th Cir.2005) (noting that, even if the continued viability of a Supreme Court decision is questionable, the Eighth Circuit is bound by the

decision until the Supreme Court explicitly overrules it).

■ Second, even if the court were not completely satisfied that *Libretti* is still binding law, the court would nevertheless find that *Apprendi* and its progeny do not apply to a criminal forfeiture determination. Defendant attempts to conflate the *criminal fine* at issue in *Southern Union* with the *criminal forfeiture* at issue in this case. In doing so, Defendant relies on the Supreme Court holding in *Bajakajian* that a criminal forfeiture is subject to the limits imposed by the Eighth Amendment's Excessive Fines Clause. There is, however, a notable difference between the criminal fine at issue in *Southern Union* and the criminal forfeiture at issue in this case. The statute at issue in *Southern Union* imposes a cap on the fine a judge can impose at sentencing—no more than $50,000 per day of violation. Criminal forfeiture, on the other hand, has no applicable statutory maximum. As the Second Circuit recognized in *Fruchter*, "[a] judge cannot exceed his constitutional authority by imposing a punishment beyond the statutory maximum if there is no statutory maximum. Criminal forfeiture is, simply put, a different animal from determinate sentencing." *Fruchter*, 411 F.3d at 383; *see also United States v. Hall*, 411 F.3d 651, 655 (6th Cir.2005) (finding that 18 U.S.C. § 982(a)(2) does not impose a statutory maximum); *United States v. Messino*, 382 F.3d 704, 713 (7th Cir.2004) ("The criminal forfeiture provisions do not include a statutory maximum; they are open-ended in that *all* property representing proceeds of illegal activity is subject to forfeiture.").

The court is aware of only one federal court that has addressed the applicability of *Apprendi* to criminal forfeiture determinations following the decision in *Southern Union*.[6] In *United States v. Crews*, Nos. 10–663–4, –6, 885 F.Supp.2d 791, 802, 2012 WL 3517343, at *11 (E.D.Pa. Aug. 14, 2012), the United States District Court for the Eastern District of Pennsylvania determined that, because there is no applicable statutory maximum, "*Apprendi*, and its progeny, are plainly inapposite." *Id.* Thus, the court in *Crews* rejected the defendant's argument that *Southern Union* impacts forfeiture determinations. The court finds that the reasoning in *Crews* is persuasive.

In view of the foregoing, the court finds it unnecessary to address the parties' remaining arguments and also declines the government's invitation to make the forfeiture determination using the higher reasonable doubt standard. Because the court concludes that Defendant has no Sixth Amendment right to a jury determination on the forfeiture allegations, the court next turns to Defendant's statute of limitations argument.

### B. Statute of Limitations

■ Defendant argues that the applicable statute of limitations for mail and wire fraud precludes forfeiture of proceeds obtained prior to April 28, 2006. The government counters that, because forfeiture is not a substantive criminal offense, no statute of limitations applies. Furthermore, the government argues that it need only prove that the specific properties in question are traceable to the scheme charged in the Indictment. Additionally, the government notes that Count 16 of the Indictment charged a conspiracy to commit mail and wire fraud and the applicable statute of limitations for conspiracy does

---

**6.** Defendant claims that another post-*Southern Union* case, *United States v. Sanford Ltd.*, 878 F.Supp.2d 137 (D.D.C.2012), supports his argument. *Sanford*, however, dealt with the Alternative Fines Act. *See id.* at 147. Accordingly, the court finds that it is not relevant to the issue presented in this case.

not begin to run until the date of the final overt act.

■ For the reasons set forth by the government in its Reply to Defendant's Resistance to the Motion, the court finds that Defendant's argument is unavailing. It is a well-settled point of law that the government may seek the forfeiture of all proceeds involved in a scheme or conspiracy. *See* 18 U.S.C. § 981(a)(1)(C) (providing that "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable" to mail fraud, wire fraud or a conspiracy to commit mail and wire fraud is subject to forfeiture); *United States v. Venturella,* 585 F.3d 1013, 1015, 1016–17 (7th Cir.2009) (holding that the defendants must forfeit the total proceeds of the scheme to defraud); *United States v. Capoccia,* 503 F.3d 103, 117–18 (2d Cir. 2007) ("Where the conviction itself is for executing a scheme, engaging in a conspiracy, or conducting a racketeering enterprise, the government need only establish that the forfeited assets have the 'requisite nexus,' Fed.R.Crim.P. 32.2(b)(1), to that scheme, conspiracy, or enterprise."); *see also United States v. Emor,* 850 F.Supp.2d 176, 217 (D.D.C.2012) ("When a defendant has engaged in a mail or wire fraud scheme, forfeiture is not limited to the proceeds gained through the particular mailing or wire transaction on which the conviction was based; rather, it 'extends to the entire scheme' of which the mailing or wire transaction was a part." (quoting *Venturella,* 585 F.3d at 1015)). Defendant has cited no authority, binding or persuasive, which leads the court to a different conclusion. Thus, the court rejects Defendant's statute of limitations argument.

## C. Legitimate Income

■ Next, Defendant argues that, prior to 2004, he had legitimate income from his law practice.[7] Because Defendant claims he had some legitimate income, he contends that the government has not carried its burden of proving by a preponderance of the evidence that the specific properties acquired prior to 2004, as listed in Groups B through E, are proceeds of the BLP. Defendant points to his tax returns for 2000 and 2002, which allegedly show his earnings from his law practice, as evidence of his legitimate income. Furthermore, Defendant notes that his wife was making approximately $100,000 per year. In response, the government maintains that the evidence establishes that Defendant did not have any significant legitimate income since 2000. The government argues that Defendant's tax returns are not a reliable source for determining any income he may have derived from his law practice because Defendant's "calculations of his 'alternative income' rest on the erroneous assumption that [Defendant] segregated any attorney income from the funds of the [BLP]." Reply to Defendant's Resistance to Motion at 3. In addition, the government notes that Defendant "fails to account for [his] expenses during the periods in question." *Id.* at 2. Moreover, the government argues that Defendant does not claim that "any of the assets he wishes to exclude from forfeiture were *actually purchased* with" the proceeds of his alleged legitimate law practice. *Id.* at 5.

For the reasons stated by the government in its Memorandum in Support of the Motion and its Reply to Defendant's Resis-

7. In the Joint Statement of Issues, Defendant argues that he had legitimate income "in the early years of the BLP (pre–2004)." Joint Statement of Issues at 9. Similarly, in his Resistance, Defendant contends that he "had sufficient legitimate income to purchase the assets listed in [G]roup B and [G]roup C through the year 2003." Resistance at 3. However, at the hearing, Defendant objected only to those properties purchased prior to the end of 2002. Because the court concludes that Defendant did not have any significant legitimate income since 2000, the court finds it unnecessary to address this discrepancy.

tance to the Motion, the court finds that Defendant's arguments are unavailing. First, the court agrees with the government that Defendant's tax returns are not a reliable basis for determining his legitimate income. For example, Defendant's tax returns for 2000 and 2002 show his law practice's net profit as $205,143 and $206,774, respectively. *See* 2000 Schedule C, Defendant's Forfeiture Exhibit A (docket no. 295–1); 2002 Schedule C, Defendant's Forfeiture Exhibit B (docket no. 295–2). However, at trial, Defendant's secretary, Elizabeth Stajduhar–Perigen, testified that, in the early years of the BLP, Defendant saw "a few actual legal clients." Stajduhar–Perigen further testified that Defendant often referred his "few actual legal clients" to other attorneys. Defendant also testified that his law practice "was not huge." Tr. (docket no. 320) at 153. The court finds it incredulous that Defendant was making over $200,000 per year as an attorney given such a limited law practice. Defendant has provided the court with no billing statements or names of clients from which the court could conclude differently. Accordingly, the court agrees with the government that Defendant more than likely included BLP income as attorney income on his tax returns for 2000 through 2003.

Second, to the extent Defendant did have some legitimate income between 2000 and 2003, Defendant has produced no evidence of his personal expenses during that period, such as mortgage payments, car-related expenses, child rearing expenses, grocery bills and so forth. Even if Defendant's wife was making $100,000 per year—a claim Defendant has failed to substantiate—the court has no means of determining whether whatever legitimate in-

come Defendant had in combination with his wife's income would be sufficient to cover not only personal expenses but also the collectibles and luxury items listed in Groups B through E. Furthermore, the government aptly notes that Defendant does not allege that he actually purchased any of the items listed in Groups B through E with any legitimate income; rather, Defendant merely raises the possibility that he had legitimate income between 2000 and 2003.

Thus, in view of the foregoing, the court finds that Defendant's argument is without merit. The government has proven by a preponderance of the evidence that Defendant had no significant legitimate income since the inception of the BLP and, consequently, there is no likely source for the items listed in Groups B through E other than BLP proceeds.

### D. Objections to Particular Items as "Proceeds"

██ Next, Defendant claims that he purchased eleven of the properties listed in Groups B, C and D before he had any significant income from the BLP, *see id.* at 11–12 (identifying eleven properties in dispute), and, therefore, those properties are not subject to forfeiture as proceeds.[8] The government counters that, as the trial evidence shows, Defendant did not have any significant legitimate income since the inception of the BLP in 2000.

For the reasons stated by the government in its Memorandum in Support of the Motion and its Reply to Defendant's Resistance to the Motion, the court finds that the government has proven by a preponderance of the evidence that the eleven items Defendant claims that he purchased

---

**8.** The court notes that, in the parties' Joint Statement of Issues, Defendant maintains that he received four of the properties listed in Group C as gifts, *see* Joint Statement of Issues at 10 (identifying four properties in dispute), and, therefore, those properties are not subject to forfeiture as proceeds. At the hearing, however, Defendant withdrew this objection.

with non-BLP funds are, in fact, BLP proceeds and, therefore, subject to forfeiture.

### E. Substitute Assets, Including a Money Judgment

Because Defendant's current assets constitute only a fraction of the total proceeds of the BLP, the government requests that, pursuant to the substitute assets provision of 21 U.S.C. § 853, the court enter a money judgment against Defendant in the amount of $51,568,087.17. Furthermore, in the event that the court finds that any of the specific properties listed in Appendix A to the Indictment are not "proceeds" under 18 U.S.C. § 981(a)(1)(C), the government requests that the court find the properties are forfeitable as substitute assets. In his Resistance to the Motion, Defendant contends that the government has failed to satisfy the requirements under 21 U.S.C. § 853. Furthermore, Defendant argues that, if the court issues a money judgment against him, the money judgment should be limited to the amount of proceeds he personally retained.

In relevant part, 21 U.S.C. § 853(p) states:

**(1) In general**

Paragraph (2) of this subsection shall apply, if any property described in subsection (a), as a result of any act or omission of the defendant—

(A) cannot be located upon the exercise of due diligence;

(B) has been transferred or sold to, or deposited with, a third party;

(C) has been placed beyond the jurisdiction of the court;

(D) has been substantially diminished in value; or

(E) has been commingled with other property which cannot be divided without difficulty.

**(2) Substitute property**

In any case described in any of subparagraphs (A) through (E) of paragraph (1), the court shall order the forfeiture of any other property of the defendant, up to the value of any property described in subparagraphs (A) through (E) of paragraph (1), as applicable.

21 U.S.C. § 853(p). In *United States v. Smith,* 656 F.3d 821, 827 (8th Cir.2011), *cert. denied,* —— U.S. ——, 132 S.Ct. 1586, 182 L.Ed.2d 200 (2012), the Eighth Circuit held that "§ 853 permits imposition of a money judgment on a defendant who has no assets at the time of sentencing." *Id.; accord United States v. Prather,* 456 Fed. Appx. 622, 625 (8th Cir.2012). "[T]he court must determine the amount of money that the defendant will be ordered to pay." Fed.R.Crim.P. 32.2(b)(1)(A). " 'The court may make the determination based on evidence in the record, or on additional evidence submitted by the defendant or evidence submitted by the government in support of the motion for the entry of a judgment of forfeiture.' " *Prather,* 456 Fed.Appx. at 625 (quoting Fed.R.Crim.P. 32.2 advisory committee's note).

The parties' arguments raise two separate issues. First, the parties disagree about the extent of Defendant's liability. Second, Defendant contends that the government has failed to satisfy the requirements under 21 U.S.C. § 853(p). The court shall address each issue in turn.

#### 1. Extent of Defendant's liability

■■■ Defendant argues that his liability should be limited to the BLP proceeds he personally retained—$6,274,010. *See* Overall BLP Financial Summary 2003–2010, Government Trial Exhibit 118 at 1. Alternatively, Defendant requests that the court limit his liability to "a figure consisting of the amount of proceeds and directly forfeitable property the government has recovered from all defendants subtracted from the $25 million that was not returned to the investors." Defendant's Resistance

to Motion at 7. The government, on the other hand, argues that Defendant is liable for the total proceeds of the BLP—$51,568,087.17. *See* BLP Lender Summary—Main, Government Trial Exhibit 102 at 3. The government, however, agrees that Defendant should be held jointly and severally liable with his co-conspirators, James Scott Brown and Smith.

■■■ Under 18 U.S.C. § 981(a)(1)(C), the court shall order Defendant to forfeit "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to" the mail fraud, wire fraud and conspiracy to commit mail and wire fraud offenses. 18 U.S.C. § 981(a)(1)(C). As noted above, 18 U.S.C. § 981(a)(2) provides two different definitions of proceeds—subparagraph A is applicable when the case involves "illegal goods, illegal services, unlawful activities, and telemarketing and health care fraud schemes" and subparagraph B is applicable when the case involves "lawful goods or lawful services that are sold or provided in an illegal manner." 18 U.S.C. § 981(a)(2). In the case of a conspiracy, a defendant's "liability is not limited to the amount the government proves he personally obtained. He is jointly and severally liable to forfeit the proceeds of the criminal enterprise." *United States v. Elder,* 682 F.3d 1065, 1073 (8th Cir.2012); *cf. United States v. Simmons,* 154 F.3d 765, 769 (8th Cir.1998) ("Codefendants are properly held jointly and severally liable for the proceeds of a RICO enterprise.").

In this case, Defendant offered no lawful goods or lawful services as part of the BLP; rather, Defendant merely took lenders' investments under false pretenses, and, then, after deducting fees for himself and his co-conspirators, he redistributed new investments as interest or principal to old investors. Accordingly, the court finds that 18 U.S.C. § 981(a)(2)(A) provides the applicable definition of "proceeds." Therefore, Defendant's liability is not limited to his net gain and he is not entitled to a deduction for any direct costs incurred in operating the BLP, including money returned to investors in the form of interest or principal. After reviewing the trial evidence, the court agrees with the government that the conspiracy entailed a total of $51,568,087.17 in proceeds. Accordingly, the court finds that Defendant is jointly and severally liable to forfeit $51,568,087.17.

### 2. Requirements under 21 U.S.C. § 853(p)

■■■ Defendant next argues that the government has failed to meet the requirements under 21 U.S.C. § 853(p). The court disagrees. The government has conducted an "in-depth analysis of financial records and [has] execut[ed] multiple search warrants, [but] has been able to recover only a small portion of the proceeds that [Defendant] and his coconspirators obtained or retained as a result of their crimes." Memorandum in Support of Motion at 15. As the government notes, the dearth of recoverable proceeds is attributable to the fact that Defendant and his co-conspirators "spent nearly all of the money they received." *Id.* at 5. Indeed, the evidence at trial established that, during the height of the BLP, Defendant lived a lavish lifestyle, including frequent travel, a membership with the exclusive Racquet Club and use of a car service on a daily basis.

Thus, the court finds that the government has met its burden of proving that, as a result of Defendant's acts, the bulk of the BLP proceeds cannot be located or have been transferred to third parties. Accordingly, the court finds that it is appropriate to enter a personal money judgment against Defendant in the full amount of $51,568,087.17. Furthermore, in the event

that the Eighth Circuit determines that the court erroneously concluded that any of the specific properties listed in Appendix A to the Indictment constitute proceeds, the court finds such properties are forfeitable as substitute assets. As the government notes, the amount of the money judgment will be reduced by the funds received from the sale of the properties listed in Appendix A. Finally, because Defendant is jointly and severally liable, the money judgment will be further reduced by any monies recovered from his co-conspirators.

### F. Eighth Amendment

Finally, Defendant argues that a money judgment in the amount of $51,568,087.17 is a grossly disproportionate penalty in violation of the Eighth Amendment's Excessive Fines Clause. Defendant contends that the crimes in this case cannot be considered serious enough to warrant such a large forfeiture judgment because Smith, one of Defendant's coconspirators, received a sentence of probation and, likewise, Brown, the other coconspirator, received a thirty-six month sentence. Furthermore, Defendant contends that, because half of the proceeds were returned to lenders as interest or principal, it would be a grossly disproportionate penalty to hold Defendant accountable for the full $51,568,087.17.

In its Reply to Defendant's Resistance to the Motion, the government first suggests that the court need not conduct an inquiry into the gross disproportionality of the forfeiture because *Bajakajian* is "inapplicable where the government does not seek to forfeit property that is merely 'involved in' an offense but instead seeks to forfeit the *proceeds* of the offense." Reply to Defendant's Resistance to Motion at 11. Moreover, the government argues that, in a conspiracy case where a defendant is held jointly and severally liable for the proceeds of the offense, courts have gener-

ally upheld forfeiture judgments unless the defendant was only a minor participant. Finally, the government argues that the forfeiture of $51,568,087.17 is not a grossly disproportionate penalty given the nature and extent of Defendant's offenses.

As previously noted, the Supreme Court held in *Bajakajian* that a punitive forfeiture is subject to the Eighth Amendment's prohibition against excessive fines. *See Bajakajian,* 524 U.S. at 328, 118 S.Ct. 2028. *Bajakajian* directs "district courts ... [to] compare the amount of the forfeiture to the gravity of the defendant's offense. If the amount of the forfeiture is grossly disproportional to the gravity of the defendant's offense, it is unconstitutional." *Id.* at 336–37, 118 S.Ct. 2028; *accord Smith,* 656 F.3d at 828 (quoting *Bajakajian,* 524 U.S. at 337, 118 S.Ct. 2028). Eighth Circuit precedent establishes a two-prong inquiry for determining whether a forfeiture judgment violates the Excessive Fines Clause. *See United States v. Dodge Caravan,* 387 F.3d 758, 763 (8th Cir.2004). First, the defendant must "mak[e] a prima facie showing of gross disproportionality." *Id.* (alteration in original) (quoting *United States v. Bieri,* 68 F.3d 232, 236 (8th Cir.1995)) (internal quotation marks omitted); *see also United States v. Bollin,* 264 F.3d 391, 417 (4th Cir.2001) ("The burden is on the party challenging the constitutionality of the forfeiture to demonstrate its excessiveness."). If the defendant is able to make such a showing, "the court considers whether the disproportionality 'reach[es] such a level of excessiveness that ... the punishment is more criminal than the crime.'" *Dodge Caravan,* 387 F.3d at 763 (first alteration in original) (quoting *United States v. Premises Known as 6040 Wentworth Ave. S., Minneapolis, Hennepin Cnty., Minn.,* 123 F.3d 685, 688 (8th Cir.1997)).

In determining whether a forfeiture amount is grossly disproportional to the offense, the court can consider a wide range of factors. In *Bajakajian*, the Supreme Court examined the nature of the defendant's offense, whether the offense was related to any other illegal activities, the gravity of the offense as measured by the Guidelines sentence and the harm the defendant caused. *See Bajakajian*, 524 U.S. at 337–39, 118 S.Ct. 2028; *see also Bollin*, 264 F.3d at 417 (identifying the *Bajakajian* factors as "the nature and extent of the criminal activity, its relation to other crimes, its penalties, and the harm it caused" (quoting *United States v. Ahmad*, 213 F.3d 805, 813 (4th Cir.2000)) (internal quotation marks omitted)). The Eighth Circuit has further elaborated that the court should consider the value of the property to be forfeited and, " '[i]f the value of the property forfeited is within or near the permissible range of fines using the sentencing guidelines, the forfeiture almost certainly is not excessive.' " *United States v. Sherman*, 262 F.3d 784, 795 (8th Cir.2001) (quoting *United States v. 817 N.E. 29th Drive*, 175 F.3d 1304, 1310 (11th Cir.1999)). Furthermore, the court may consider "the personal benefit reaped by the defendant" and "the defendant's motive and culpability." *Dodge Caravan*, 387 F.3d at 763 (quoting *Bieri*, 68 F.3d at 236).

Under the relevant factors identified in *Bajakajian* and by the Eighth Circuit, the court finds that a $51,568,087.17 forfeiture judgment is not grossly disproportional to Defendant's offenses.[9] First, the nature and extent of Defendant's offenses weigh against a finding of gross disproportionality. Over the course of ten years, Defendant and his coconspirators defrauded approximately 140 individuals out of approximately $51,568,087.17. *See Bollin*, 264 F.3d at 418 (finding that a $1.2 million forfeiture judgment was not grossly disproportional to the defendant's offense considering that the defendant was "involved [in] a continuing securities fraud scheme that defrauded multiple investors out of millions of dollars" over the course of two years). Moreover, Defendant was not a minor participant in the scheme. *See United States v. Jalaram, Inc.*, 599 F.3d 347, 354–55 (4th Cir.2010) (explaining that, "in most cases, courts ultimately will find a forfeiture of proceeds not grossly disproportional to the offense" but noting that an exception to that general proposition arises in cases involving joint and several liability where the defendant "played a truly minor role in a conspiracy that generated vast proceeds"); *United States v. Van Brocklin*, 115 F.3d 587, 601–02 (8th Cir.1997) (finding that a $1.3 million forfeiture order was grossly disproportional to the defendant's offense given that the defendant was a "secondary figure in the crimes" and she "reaped little benefit"). The evidence established that Defendant was the primary organizer and beneficiary of the BLP. Between 2003 and the time the BLP collapsed in 2010, Defendant netted approximately $6.274 million in fees. Overall BLP Financial Summary 2003–2010, Government Trial Exhibit 118 at 1. In comparison, Smith netted approximately $2.741 million and Brown netted approximately $1.394 million. *Id.*

Second, Defendant's offenses are serious. The United States Sentencing Guidelines recommend a sentence of life imprisonment. The court recognizes that the forfeiture order greatly exceeds the Guidelines fine range of $25,000 to $250,000. The court, however, does not find this fact

---

**9.** Although the government suggests that *Bajakajian* may not apply when the government seeks forfeiture of the proceeds of an offense as opposed to property involved in the offense, the court finds it unnecessary to determine the validity of such an argument.

to be determinative. Under Eighth Circuit precedent, if the value of the property to be forfeited is within or near the applicable Guidelines range, "the forfeiture almost certainly is not excessive," *Sherman*, 262 F.3d at 795 (quoting *817 N.E. 29th Drive*, 175 F.3d at 1310) (internal quotation mark omitted). However, the Eighth Circuit has not suggested that this is the sole, or even the most important, means of assessing excessiveness; rather, it is one factor to be considered among the various factors identified by the Supreme Court and the Eighth Circuit. In the unique circumstances of this case, the court is not persuaded that the forfeiture is grossly disproportional because it exceeds the Guidelines fine range.

Finally, Defendant caused significant harm. In his Resistance to the Motion, Defendant suggests that the forfeiture is excessive, in part, because nearly half of the proceeds were returned to lenders in the form of interest and principal. Defendant fails to acknowledge, however, that ninety-six lenders lost a total of $30,677,714.31 in the BLP. BLP Lender Summary—Main, Government Trial Exhibit 102 at 3.

Thus, in view of all the circumstances in this case, the court finds that Defendant has failed to make a prima facie showing that a $51,568,087.17 forfeiture order is excessive. Even if Defendant did make such a showing, the court does not find that the forfeiture amount reaches "such a level of excessiveness that ... the punishment is more criminal than the crime." *Dodge Caravan*, 387 F.3d at 763 (quoting *Premises Known as 6040 Wentworth Ave. S.*, 123 F.3d at 688).

10. The court notes that it has already entered money judgments against Smith and Brown. *See* Derek J. Smith Amended Judgment (docket no. 258) at 5 (incorporating by reference the Preliminary Order of Forfeiture (docket

## VI. CONCLUSION

In light of the foregoing, the court shall order Defendant to forfeit the specific properties listed in Appendix A to the Indictment. In the event that the Eighth Circuit finds that any of the specific properties listed in Appendix A are not proceeds, the court finds that such properties are forfeitable under 21 U.S.C. § 853(p). Finally, the court shall enter a personal money judgment against Defendant in the amount of $51,568,087.17. Defendant shall be jointly and severally liable with his co-conspirators, Smith and Brown,[10] for the $51,568,087.17 money judgment.

Accordingly, the "Motion ... for Preliminary Order of Forfeiture" (docket no. 276) is **GRANTED.** A Preliminary Order of Forfeiture shall follow.

**IT IS SO ORDERED.**

no. 194)); James Scott Brown Judgment (docket no. 327) at 7 (incorporating by reference the Preliminary Order of Forfeiture (docket no. 287)).